771 So.2d 220 (2000)
Vernon A. LOVE
v.
Titus M. LEWIS, et al.
No. 00-06.
Court of Appeal of Louisiana, Third Circuit.
October 11, 2000.
Rehearing Denied November 28, 2000.
Jackson B. Davis, Shreveport, Louisiana, Counsel For Plaintiff/Appellee.
Scott W. McQuaig, McQuaig & Stelly, Metairie, Louisiana, Counsel for Defendants/Appellants Titus M. Lewis & Frozen Food Express Transp. SVC.
*221 Ronald E. Corkern, Jr., Corkern & Crews, Natchitoches, Louisiana, Counsel for Defendant/Appellant State Farm Mutual Automobile Insurance Co.
Court composed of Chief Judge NED E. DOUCET, Jr., Judge GLENN B. GREMILLION, Judge ELIZABETH A. PICKETT.
GREMILLION, Judge.
In this case, the defendants, Titus M. Lewis and Frozen Food Express Transportation Service (hereinafter referred to collectively as Frozen Food Express), appeal the decision of the trial court granting a Judgment Notwithstanding the Verdict (JNOV) in favor of the plaintiff, Vernon A. Love. We affirm in part, reverse in part, and render judgment.

FACTS
On February 23, 1996, Lewis was operating an eighteen-wheeler leased to Frozen Food Express when he struck the rear of a Ford Festiva operated by Love. The accident occurred on Interstate 49 in Natchitoches Parish, Louisiana, and resulted in heavy damage to the rear of Love's vehicle. Both Love and his passenger, John Broussard, were transported to the Natchitoches Parish Hospital for treatment. After his release from the hospital, Love was able to drive his vehicle, after performing minor repairs, back to his home in Shreveport.
Five days later on February 28, 1996, Love began treatment with Dr. James Lewis Zum Brunnen. According to Dr. Zum Brunnen, Love suffered from muscular skeletal system soreness, primarily in the cervical, thoracic, and lumbar areas, as well as an apparent sprain of the right ankle. As his treatment continued, Love complained of pain in his arms, lower back, and neck and soreness in his right elbow. On May 28, 1996, Dr. Zum Brunnen ordered a cervical MRI, which revealed a herniated disc at the C6-7 disc level. Dr. Zum Brunnen felt this was consistent with Love's symptoms, which included a decrease in his triceps reflex. Although he felt that surgery would help Love's symptoms, he left it to Love to decide whether his symptoms justified the operation. Love agreed to the surgery and it was conducted on September 25, 1996.
After confirming the pre-operative diagnosis of a ruptured disc, Dr. Zum Brunnen removed it and fused the C6-7 disc level. On October 31, 1996, Dr. Zum Brunnen found that Love was healing normally, and that his neck pain had subsided. He treated Love's tendinitis in his elbow by injection. By May 5, 1997, Dr. Zum Brunnen felt that Love had recovered from the surgery, even though he continued complaining of neck pain. At that time, he discussed with Love his limitations and restricted him from repetitive up and down and side-to-side motions. Dr. Zum Brunnen gave Love a nine percent whole body impairment and limited him to medium to light-duty work. He did not feel that Love could return to work as a mud engineer in the oilfield, a job he had previously performed in the mid-1980's. Dr. Zum Brunnen was emphatic that Love's disc herniation resulted from the accident at issue.
According to Love, he had no pre-existing conditions, save the fact that he experienced severe pain in his back and spinal column as the result of passing kidney stones several months before the accident. Dr. Carl Goodman, an expert in the field of orthopedic surgery, was retained by Frozen Food Express to perform an independent medical examination on Love. Dr. Goodman testified that Love suffered from degenerative cervical disc disease at C6-7, as well as a midline bulge at that level, and tendinitis in his elbow. Dr. Goodman testified that the degenerative disc disease pre-existed the accident. It was his opinion that Love should return to Dr. Zum Brunnen and have his elbow injected before proceeding with any aggressive surgical treatment of his neck. It is noted that Dr. Goodman agreed with Dr. Zum Brunnen's diagnosis, testifying that, "Dr. *222 Zum Brunnen's a qualified orthopedic surgeon, a wonderful surgeon, and I'm sure whatever he said was true." He further agreed that degenerative cervical disc disease is a pre-existing condition which tends to become problematic, and that it would take a blow of great intensity to rupture a disc whether it was in a healthy or degenerative condition.
Finally, Love called several witnesses who testified to the general theme that he had no previous neck or arm problems and that he performed his duties as a maintenance man without problem prior to the accident.[1] The witnesses further testified that Love displayed noticeable pain after the accident and, even at the time of trial, was unable to perform the same duties he was performing prior to the accident.

TRIAL PROCEDURE
Following a trial on the merits, the jury apportioned fault for the accident at 75% to Lewis and 25% to Love. The jury also awarded the following damages: $827.00 in medical expenses; $75.00 in general damages; and $2,305.97 in property damages. Subsequent to the jury verdict, Love timely filed a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion for New Trial. Following a hearing on the motion, the trial court granted the JNOV insofar as it found Lewis 100% at fault and Love 0% at fault. The trial court also increased general damages from $75.00 to $150,000.00 and medical expenses from $827.00 to $26,018.95. The trial court further awarded Love $75.00 in towing expenses and expert witness fees in the amount of $918.75 for Harju & Associates, $1,500.00 for Dr. James Zum Brunnen, and $500.00 for Dr. Richard H. Galloway.
Frozen Food Express appeals this judgment, assigning three specifications of error. First, it claims that the trial court erred in granting Love's motion for JNOV. Second, in the alternative, Frozen Food Express contends the trial court erred in awarding excessive general damages to Love. Finally, it alleges the trial court erred in granting Love's motion for a new trial.

DISCUSSION

The Law
La. Code Civ.P. art. 1811 provides the basis for filing a Motion for JNOV. However, Article 1811 does not set forth any specific grounds on which a trial court may set aside a verdict. Therefore, we rely on the well-settled jurisprudence that a JNOV may only be granted when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable people could not arrive at a contrary verdict on the facts at issue. Peterson v. Gibraltar Sav. & Loan, 98-1601 (La.5/18/99); 733 So.2d 1198. Additionally, "[t]he trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute the reasonable inferences of the facts for those of the jury." McBride v. H. Brown Machine Shop, 98-1271, p. 3 (La.App. 3 Cir. 3/31/99); 732 So.2d 650, 652, writ denied, 99-1288 (La.7/2/99); 741 So.2d 20, quoting Webb v. Goodley, 512 So.2d 527, 530 (La.App. 3 Cir.1987). In reviewing the grant of a JNOV, an appellate court must first determine whether the trial court erred in granting the JNOV. The appellate court does this by applying the same criteria as the trial court. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La. 1991). If reasonable people could have arrived at the same verdict, given the evidence presented to the jury, then the JNOV is improper. Id.

Apportionment of Fault
The trial court reduced Love's fault from 25% to 0%, assigning 100% of the fault in causing the accident to Lewis. We *223 find the trial court erred in granting the JNOV on this issue. The evidence is, at best, sketchy as to the speed each vehicle was going at the time of the accident. Love and Broussard both testified that Love was proceeding at fifty-five miles per hour. The speed limit on Interstate 49 was sixty-five mile per hour. Lewis, on the other hand, testified that he was operating his vehicle within the speed limit and that he began a passing maneuver as he approached the slow-moving Love vehicle, which he estimated was traveling between thirty-five to forty miles per hour. Just as he started to pass Love's vehicle, Lewis stated that a red car pulled out from behind him at a higher rate of speed in order to pass him; thereby, preventing him from passing Love's vehicle. Lewis claims that, as he pulled back into the right hand lane and applied his brakes, he was unable to avoid striking Love's vehicle from the rear due to its slow speed.
Trooper Don Dowden of the Louisiana State Police investigated the accident. His report reflects that Love was traveling fifty-five miles per hour. However, he testified that that information came from Love himself. It is further noted that he issued a citation to Lewis for careless operation under La.R.S. 32:58.
Considering all the evidence, we do not find it unreasonable for the jury to have concluded that Love was traveling at a slow rate of speed on the interstate highway. We further find that traveling at a slow rate of speed on such a highway may constitute negligence and, as such, the jury was not manifestly erroneous or clearly wrong in concluding that Love was 25% at fault in causing the accident. La. R.S. 32:64(B). We, therefore, reverse the trial court's decision finding Lewis to be 100% at fault and reinstate the jury verdict finding Lewis 75% at fault and Love 25% at fault.

Medical Expenses
Frozen Food Express argues that the trial court erred in increasing Love's medical expenses to $26,018.95. It is apparent that the jury either did not believe that Love suffered serious injury as a result of the accident or that the accident did not precipitate the injury which required the disc surgery. A thorough review of the record reflects that reasonable people could not reach such a conclusion. It is probable that the jury was persuaded by the fact that Love went to see an attorney prior to seeing a physician, and then saw the physician recommended by his attorney. However, the evidence inarguably shows that Love had no pre-existing neck condition and that he suffered a severe blow to his vehicle in the accident. This blow was so severe that it caused tools he was carrying to become damaged, his glasses to be knocked off, and Broussard's dentures to be knocked out. Dr. Zum Brunnen attributes the disc herniation to the accident, and even Dr. Goodman admitted that it would take a severe blow to rupture a disc, even if a person was suffering from pre-existing degenerative cervical disc disease. Based on the evidence, there can be no other conclusion than that Love's injuries, which resulted in disc removal and fusion, were caused by the accident. Having reached that conclusion, we find that the trial court was correct in awarding the medical expenses associated with the injury and resulting surgery.

General Damages
Frozen Food Express also complained that the trial court erred in increasing Love's general damages to $150,000. The jury award of $75 is tantamount to no award at all. Once the trial court determines that a JNOV is warranted, it should render a de novo award based on its independent assessment of damages. Perkins v. Guaranty Nat. Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, rehearing denied, writ denied, 96-0759 (La.5/31/96); 673 So.2d 1033. As we have noted, the jury obviously did not believe Love was injured as a result of the accident. Since we have found otherwise, an *224 award of substantial general damages is appropriate. Thus, we find that the trial court was correct in finding that the jury abused its discretion in awarding only $75 in general damages, granting a JNOV on that issue and increasing damages.
Once a trial court has granted a JNOV on the issue of damages, and has conducted its own independent assessment of the damages as trier of fact, that decision becomes the judgment of the court and it is reviewed on appeal for an abuse of discretion under the standard set forth in Coco v. Winston.[2]Anderson v. New Orleans Public Service, Inc., (La.1991); 583 So.2d 829; Doe v. Doe, 94-2284 (La. App. 1 Cir. 6/23/95); 657 So.2d 628. After reviewing general damage awards in other cases involving similar injuries, we find that the trial court abused its discretion in awarding general damages of $150,000. Accordingly, we find that an award of $100,000 is the highest amount that a reasonable trier of fact could assess for the particular injuries to this particular plaintiff under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Love experienced severe pain in his neck and elbow from the date of the accident until he underwent surgery in October 1996. Although he achieved a good result from the discectomy and fusion, he still continues to suffer pain upon exertion and changes in the weather. Additionally, he suffered a nine percent whole body impairment, is limited to performing only medium to light-duty work, and is unable to perform many of the tasks he was able to perform prior to the accident. Accordingly, while we do not find that the trial court erred in granting the JNOV on the issue of general damages, we do find that it erred by awarding excessive damages under the facts of this particular case. The judgment of the trial court awarding $150,000 in general damages is amended to reduce that award to $100,000.

New Trial
In its last assignment of error, Frozen Food Express claims that the trial court erred in granting Love's motion for a new trial. In its judgment, the trial court wrote that it "granted plaintiffs Motion for Judgment Notwithstanding the Verdict, and further granted plaintiff's Motion for New Trial should the Judgment Notwithstanding the Verdict be overruled." In our opinion herein, we have essentially reversed or overruled a portion of the JNOV. Article 1811(C)(2) provides, "If the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court orders otherwise." (Emphasis added). We had before us a complete record of the proceedings below and have throughly reviewed that record and rendered judgment as set forth above. We, therefore, rule otherwise pursuant to Article 1811(C)(2) and hold that the trial court's judgment conditionally granting a new trial is reversed and set aside.

CONCLUSION
For the foregoing reasons, the JNOV as to the percentage of fault assessed to each party is reversed and the jury verdict finding the plaintiff-appellee, Vernon A. Love, 25% at fault and the defendant, Titus M. Lewis, 75% at fault is reinstated. The JNOV on the issue of medical expenses is affirmed. Further, the JNOV on the issue of general damages is affirmed; however, we reduce the amount awarded to $100,000. Consistent with the reinstatement of the jury award on fault, we reduce the damages awarded to Love by 25%. Finally, *225 the trial court's judgment conditionally granting a new trial is reversed and set aside. The costs of this appeal are to be shared equally by the parties.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Love acted as a maintenance man for six to seven years prior to this accident on rent houses which he and/or his mother owned.
[2] In Coco v. Winston, (La.1976); 341 So.2d 332, 335, the supreme court held; "Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court."