STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-745

LEONARD BLOCKER, ET UX.

VERSUS

RAPIDES REGIONAL MEDICAL CENTER, ET AL.

**********
APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 191,652
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE
**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Billie Colombaro Woodard, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

AFFIRMED.

Charles Henry Munsterman
3600 Jackson St., Suite 105
Alexandria, LA 71303
(318) 487-4972
Counsel for Plaintiffs/Appellees
    Leonard Blocker
    Elizabeth Blocker

Todd A. Townsley
Townsley Law Firm
3102 Enterprise Blvd.
Lake Charles, LA 70601
(337) 478-1400
Counsel for Plaintiffs/Appellees
    Leonard Blocker
    Elizabeth Blocker

**Victor Herbert Sooter**
**Sooter & Savoie**
**P. O. Box 1671**
**Alexandria, LA 71309**
**(318) 448-8301**
**Counsel for Plaintiff**
**Rapides Regional Medical Center**

**Marc W. Judice**
**Judice & Adley**
**P. O. Drawer 51769**
**Lafayette, LA 70505-1769**
**(337) 235-2405**
**Counsel for Defendant/Appellee**
**Medical Protective Company**
**Dr. Parmaswara Kaimal**

**David Richard Sobel**
**Provosty, Sadler & deLaunay**
**P. O. Drawer 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Defendant/Appellant**
**Louisiana Patients' CompensationFund & Oversight Board**

GREMILLION, Judge.

In this case, the defendant, the Louisiana Patient's Compensation Fund (LPCF), appeals the judgment of the trial court in favor of the plaintiff, Leonard Blocker, granting his motion for Judgment Notwithstanding the Verdict and increasing his damage award. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Blocker and his wife, Elizabeth, filed suit against Dr. Parameswara Kaimal and Rapides Regional Medical center urging that Dr. Kaimal failed to diagnose and treat a condition that developed after Dr. Kaimal performed surgery on him. The Blockers alleged that the failure eventually led to the amputation of Leonard's right lower leg and a large portion of his left foot. Rapides Regional was, thereafter, granted summary judgment and dismissed from the suit. Following a trial, the jury rendered a verdict finding Dr. Kaimal negligently treated Blocker and that this negligence was a proximate cause of his injuries. It awarded him the following sums and made the following finding:

(A) Leonard Blocker

| | |
|---|---|
| (1) Past and Future Pain and Suffering | $60,000 |
| (2) Past and Future Mental Pain and Suffering | $30,000 |
| (3) Loss of Enjoyment of Life | $10,000 |
| (4) Scarring and Disfigurement | $35,000 |
| (5) Past Medical Expenses | $52,716.04 |
| (6) Are Future Medical Expenses Needed | YES |

1

(B) Elizabeth Blocker

    (1) Loss of Consortium                          $15,000

TOTAL AWARD                              $202,716.04

Judgment was rendered on December 16, 2002, after which Blocker filed a motion for JNOV, which was granted. Following a hearing, the trial court made the following damage awards:

(A) Leonard Blocker

| | |
|---|---|
| (1) Past and Future Pain and Suffering | $100,000 |
| (2) Past and Future Mental Pain and suffering | $50,000 |
| (3) Loss of Enjoyment of Life | $100,000 |
| (4) Scarring and Disfigurement | $100,000 |
| (5) Past Medical Expenses | $52,716.04 |
| (6) Are future medical expenses needed? | Yes |

(b) Elizabeth Blocker

    (1) Loss of Consortium                          $15,000

TOTAL AWARD                              $417,716.04

The LPCF timely appealed to this court.

## ISSUES

LPCF assigns as error:

1.    The trial court's award for future medical benefits when Blocker failed to establish, by a preponderance of the evidence, the need for such benefits and the probable cost.

2.    The trial court's award of open-ended future medical benefits, "where judgment is rendered for a total amount less than the maximum amount recoverable," contrary to La.R.S. 40:1299.43(A)(5).

2

3.	The trial court's grant of Blocker's Motion for JNOV and the increase in the general damage award by 143%.

4.	The trial court's allowing Blocker to recover for loss of enjoyment of life *and* past, present, and future mental and physical injuries.

## FUTURE MEDICAL TREATMENT AND COSTS

LPCF first urges that the jury committed manifest error in finding that Blocker needed future medical treatment. Pursuant to La.R.S. 40:1299.43(A)(1), whether a patient is in need of future medical care is a question of fact for the jury to decide. Thus, we review the jury's finding under the well-established manifest error rule. LPCF urges that Blocker failed establish that he was in need of any future medical treatment and that the jury was not presented with any medical evidence substantiating his claims for future treatment.

Although there was no physician testimony as to his future medical costs, Blocker testified that his prosthesis needs to be replaced often and that it had been replaced several times prior to trial. Blocker's son, James, also testified that his father's prosthetic device needs to be replaced. Louisiana Revised Statutes 40:1299.43(B)(1) specifically contemplates the need for the replacement of prosthetic devices as "future medical care.[1]" Apparently, the jury found merit in the testimony of Blocker and his son. Future medical care need not be supported by expert medical testimony in cases where the medical care is obvious and necessary. *See Thomas v. S.W. La. Hosp. Assoc.*, 02-645 (La.App. 3 Cir. 12/11/02), 833 So.2d 548, *writ denied,*

---

[1] La.R.S. 40:1299.43(B)(1) states: "future medical care and related benefits" for the purpose of this Sections means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services, after the date of the injury.

3

03-476 (La. 4/25/03), 842 So.2d 401.  Accordingly, we find no error in the jury's finding that Blocker will need future medical care.

Next, LPCF urges that, pursuant to La.R.S. 40:1299.43(A)(1), the trial court erred in not having the jury determine the actual cost of the future medical care. Louisiana Revised Statutes 40:1299.43(A)(1) states (emphasis added):

> In all malpractice claims filed with the board which proceed to trial, the jury shall be given a special interrogatory asking if the patient is in need of future medical care and related benefits and *the amount thereof.*

Additionally, LPCF urges that, pursuant to La.R.S. 40:1299.43(5), in cases where the total judgment is less than $500,000, a lump sum award is required. Louisiana Revised Statutes 40:1299.43(5) states:

> In all cases where the judgment is rendered for a total amount less than the maximum amount recoverable, including any amount awarded on future medical care and related benefits, payment shall be in accordance with R.S. 40:1299.44(A)(7) and 40:1299.44(B)(2)(a), (b), and (c).

Louisiana Revised Statutes 40:1299.44(A)(7)(a) states that: "Claims from the patient's compensation fund exclusive of those provided for in R.S. 40:1299.43 shall be computed at the time the claim becomes final."

First we note, as pointed out by Blocker, that LPCF did not lodge a contemporaneous objection to the jury verdict form, thereby preserving this issue for appeal. La.Code Civ.P. art. 1793(C).  After examining the issue, we still find no error in the trial court's interrogatories placed before the jury.  We find the words "the amount thereof" troublesome and in conflict with the very purpose of the Act. Louisiana Revised Statutes 40:1299.43(C) states:

> Once a judgment is entered in favor of a patient who is found to be in need of future medical care and related benefits or a settlement is

4

reached between patient and the patient's compensation fund in which the provision of medical care and related benefits is agreed upon and continuing as long as medical or surgical attention is reasonably necessary, the patient may make a claim to the patient's compensation fund through the board for all future medical care and related benefits directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished.

However, in this particular case, the total award is less than $500,000, and presumably La.R.S. 40:1299(A)(5) would require a single lump sum payment. After reviewing jurisprudence relating to the purpose of the act and functions of the LPCF, we do not find the failure to award a lump sum amount fatal to the claim.

In *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210, a case cited by both parties, the supreme court discussed the history and purpose of the provisions relating to future medical care and related benefits. It stated, pertaining to La.R.S. 40:1299.43(A)(1):

> This feature of the statutory scheme alone clearly indicates that the agency has exclusive jurisdiction of future medical and related care claims, and this meaning becomes even more evident when other aspects of the legislation are taken into consideration. Third, the same agency that is granted the authority to receive and evaluate claims, and to pay, settle or reject them, is also vested with full powers to assure the cost-effectiveness of claims adjustment and the fiscal soundness of the PCF. The agency has the power to require a medical inspection of the need of each claimant for medical care benefits every six months without a court order and more often with a court order. La.R.S. 40:1299.43G. The agency may reduce the payment of claims pro rata below actual cost of medical expenses if the agency determines that the PCF would be exhausted by payment in full of all claims during any semi-annual period . . . .

> In establishing the administrative program, the legislature gave statutory jurisdiction to the responsible agency for the purpose of granting, denying, or settling medical and related care services claims. Along with this initial decision-making responsibility the legislature gave clear authority to the agency to supervise the administration of continuing claims. The statutory provisions contemplate that the agency

5

> will develop expertise and experience in administering not only future medical care claims but also the moneys from which they are to be paid.
> . . . .

> Finally, the statutory provisions referring to the courts clearly indicate that they are not vested with original jurisdiction or decision making responsibility over future medical care claims. The courts are authorized to perform two limited functions: (I) certification of whether a malpractice victim is a patient is need, i.e., whether the victim's damages consumed the cap limits without affording her compensation for all actual medical expenses necessitated by the malpractice, and (ii) random and ephemeral housekeeping matters, viz., the court is granted a very limited continuing jurisdiction to award attorney fees when the PCF fails to pay timely, id. 43E(2), and order more frequent physical examinations of a patient, upon reasonable cause.

*Id*. at 1218.

We find an award by the jury in the "amount thereof" of future medical costs is beyond that contemplated by Act. Clearly, the trial court's role is limited and the expertise of the LPCF in determining applicable costs of future medical care has been established. LPCF has the authority and resources to determine the amount of future medical costs. Unlike a lump sum award of future medical costs awarded in a medical malpractice case not involving the LPCF, an administrative agency *does* exist for the purpose of determining the amount. Thus, the argument set forth by LPCF, that future medical care costs must be determined with certainty, is not applicable in this instance. LPCF is an administrative body specifically authorized to determine such costs.

Further, we agree with our colleagues in the fourth circuit who, when faced with an identical situation where a specific amount was not awarded, stated:

> [W]e see nothing wrong with a separate judgment approving each amount of expenses as they are incurred. The statute as a whole confirms our interpretation by providing that future medical expenses are

6

generally to be paid as incurred and by giving the district court continuing jurisdiction for this very purpose. Because the court has continuing jurisdiction, the Commissioner has the opportunity to object to any particular expense as being unreasonable at the time it is submitted for judgment. In short, although the setting of an annual limit on medical expenses damages might be more convenient to the administration of the Fund than the method adopted by the district court, *it is not mandated by the statute*.

*LaMark v. NME Hospitals, Inc.*, 522 So.2d 634, 638 (La.App. 4 Cir.), *writ denied*, 526 So.2d 803 (La.1988) (emphasis added).

LPCF cites *Merritt v. Karcioglu*, 95-1335 (La.App. 4 Cir. 1/19/96), 668 So.2d 469, *writs granted in part and denied in part*, 96-0431, 96-0435, 96-0454 (La. 4/26/96), 672 So.2d 677, *affirmed as amended*, 96-0431 (La. 2/25/97), 687 So.2d 1002, *amended on rehearing in part*, 96-0431 (La. 5/9/97), 693 So.2d 153, another fourth circuit case, in support of its proposition that failure to award a specific amount nullifies the finding of future medical need. In *Merritt,* the jury verdict did not contain a special interrogatory pertaining to future medical care *at all*. Our colleagues on the fourth circuit found that is was not the duty of the plaintiff to request the special interrogatory, but the duty of the trial court and, where the trial court forgets to give the special interrogatory, it becomes the plaintiff's duty to correct the trial court's error. Thus, because the plaintiff did not object to the lack of a special interrogatory for the jury, the appellate court limited the plaintiff's total recovery to $500,000. We decline to follow this holding and find the facts of this case more closely analogous to the *LaMark* case where the jury did indeed find the need for future medical care, but did not award a specific amount. Further, we disagree with our colleagues' holding that the trial court alone is responsible for giving the special interrogatory. It behooves the aggrieved party to register an objection if he feels the

7

trial court has committed error. This allows the trial court the opportunity to correct the error and to preserve the error for appellate review.

Although this case differs in that the total award was less than $500,000, we still find that the principles enunciated in *Kelty* control to allow a plaintiff to submit his claims for future medical care on an as needed basis, particularly where the LPCF does not object to the interrogatory. The LPCF has the expertise and resources to determine the necessity and costs for such care, particularly in this case where the only future medical cost is the replacement of the prosthesis. Further, we agree with the findings of the *LaMark* court. Although adherence to the statute may be more convenient to LPCF, a jury's factual finding that a plaintiff is in need of future medical care will not be disregarded because a specific amount was not listed on the jury interrogatory. Accordingly, this assignment of error is without merit.

**JNOV**

In *Love v. Lewis*, 00-06, pp. 4-5 (La.App. 3 Cir. 10/12/00), 771 So.2d 220, 222, *writ denied*, 00-3506 (La. 2/16/01), 786 So.2d 102, we stated:

> La.Code Civ.P. art. 1811 provides the basis for filing a Motion for JNOV. However, Article 1811 does not set forth any specific grounds on which a trial court may set a side a verdict. Therefore, we rely on the well-settled jurisprudence that a JNOV may only be granted when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable people could not arrive at a contrary verdict on the facts at issue. *Peterson v. Gibraltar Sav. & Loan,* 98-1601(La.5/18/99); 733 So.2d 1198. Additionally, "[t]he trial court may not weigh the evidence, pass on the credibility of witnesses, or substitute the reasonable inferences of the facts for those of the jury." *McBride v. H. Brown Machine Shop*, 98-1271, p. 3 (La.App. 3 Cir. 3/31/99); 732 So.2d 650, 652, *writ denied*, 99-1288 (La.7/2/99); 741 So.2d 20, quoting *Webb v. Goodley*, 512 So.2d 527, 530 (La.App. 3 Cir. 1987). In reviewing the grant of a JNOV, an appellate court must first determine whether the trial court erred in granting the JNOV. The appellate court does this by applying the same criteria as the trial court. *Anderson v. New Orleans*

8

*Public Service, Inc.,* 583 So.2d 829 (La.1991). If reasonable people could have arrived at the same verdict, given the evidence presented to the jury, then the JNOV is improper. *Id.*

After reviewing the evidence, we find the trial court did not err in granting Blocker's JNOV, as reasonable people could not have arrived at the awards it made. Blocker testified to the events leading up to the amputation of his leg. Since Dr. Kaimal's negligence is not at issue in this appeal, we will proceed to discuss Leonard's testimony regarding the affects the amputation had on his life. Prior to the amputation, Blocker recalled that his foot felt like a block of ice and was so cold that all he could do was "holler." He testified that, following the amputation, he was in pain. He also testified that, following the first amputation, while he was in rehab, his leg became infected and he had to return to the hospital to have more of it removed. Blocker stated that, when he knew the doctors or nurses were coming to change the bandaging, he would administer pain medicine because of the pain. Finally, he described how several of his toes and a portion of his left foot had to be removed.

Blocker stated he had to modify his home to accommodate a wheelchair prior to getting his prosthesis and that he was depressed about the amputation. He testified that he lost forty pounds since the amputation. He went on to describe his prosthesis and how it has to be replaced because they wear out over time. Blocker also said wearing the prosthesis is very difficult.

Blocker went on to state that he and his wife planned to travel following their retirement, but that they are unable to do that now without the assistance of their kids. He stated that it has strained his relationship with his wife and that they are no longer intimate as they were prior to the amputations. He also said he is more

dependent on his wife to do things for him than he was prior to the amputation.

Blocker's wife, Elizabeth, testified similarly as to the events leading up to the amputation. She described how Leonard was able to dispense the pain medication himself when needed and that he was also given oral pain medication. She also stated that Leonard was in so much pain he could not accomplish anything at the rehabilitation center. Following the amputation of his right leg, she stated that he began having pain in his left foot. Elizabeth stated that her husband was very depressed and would not eat. She also stated that they ceased having intimate relations. She further testified that they no longer go places like they used to. Finally, she stated that he becomes very uncomfortable when he wears his prosthesis too long and that he prefers to stay in the wheelchair.

James testified that, before the amputation, his father was in severe pain and that it was "wearing down" his mother. He said that, following the amputation, his father was still in pain and quit eating. He testified that changing the bandages in the hospital aggravated his dad's pain. James states that he goes to his parents' house two to three times per week and that his father cannot get around like he used to and no longer works in the yard or does stuff around the house. He also said that his father prefers not wear his prosthesis and that his stump festers and blisters when he wears it.

After reviewing the evidence, we find that the trial court properly granted the JNOV on the issue of damages. Blocker's injuries were extremely serious and resulted in the loss of his right leg and a large portion of his left foot. He underwent several surgeries, skin grafts, and rehabilitation. He described the discomfort he

10

experiences when he wears his prosthesis and one can only imagine the abrupt lifestyle change the loss of a limb would result in. Reasonable people could not have arrived at the awards made by the jury, thus the JNOV was properly granted. This assignment of error is without merit.

## GENERAL DAMAGES

Finally, LPCF argues that the award for loss of enjoyment of life is duplicative of the physical and mental pain and suffering awards. We disagree. In *Richard v. Teague,* 92-17, p. 22-23 (La.App. 3 Cir. 5/4/94), 636 So.2d 1160, 1174, *writ denied*, 94-1934 (La.11/11/94), 644 So.2d 388 (citations omitted), we held:

> Clearly, loss of enjoyment of life may be included within the category of general damages. However, it is not, of necessity, duplicative of "physical and mental pain and anguish, past and future, and any permanent disability". . . . In reviewing an award of general damages, a court of appeal is required to focus on the total award and not on each individual item.

We find no error in the trial court's combined award of $150,000 for past and future mental pain and suffering and loss of enjoyment of life. This assignment of error is without merit.

## CONCLUSION

The judgment in favor of the plaintiff-appellee, Leonard Blocker, is affirmed. All costs of this appeal are assessed against the defendant-appellant, the Louisiana Patient's Compensation Fund.

**AFFIRMED.**

11