633 So.2d 252 (1993)
Douglas Jerald DODSON and Rose Marie Harris Dodson
v.
COMMUNITY BLOOD CENTER OF LOUISIANA, INC., et al.
No. 92 CA 2068.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Writ Denied March 18, 1994.
*253 Paul H. Dué, Baton Rouge, for plaintiffs-appellees Douglas Jerald Dodson, Rose Marie Harris Dodson.
George M. Cotton, Charles J. Duhe, Jr., Baton Rouge, for defendant-appellant The Patient's Compensation Fund a/k/a The Patient's Compensation Fund Oversight Bd.
Cathryn S. Long, Baton Rouge, for defendant-appellee Baton Rouge General Medical Center.
Before EDWARDS, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Douglas Jerald Dodson was scheduled to undergo surgery at Baton Rouge General Medical Center (Baton Rouge General) in August, 1986. In anticipation of the surgery and out of fear of contracting Aids through blood transfusions from unknown donors, Mr. Dodson arranged to have three known donors donate blood earmarked for his use should transfusion be required. After surgery, on approximately August 8, 1986, Mr. Dodson was transfused with two pints of blood. However, the blood used was not the blood obtained from Dodson's voluntary donors. The blood had been taken from the hospital's general inventory which had been obtained from the Community Blood Center of Louisiana (Blood Center). Dodson subsequently learned that as a result of the transfusions he had been infected with what at the time was called non-A non-B hepatitis. It is now called Hepatitis-C.
On March 13, 1987, Mr. and Mrs. Dodson filed a claim with the Patient's Compensation Fund Oversight Board (Board) seeking to empanel a medical review panel to review their claim against Baton Rouge General, which is a qualified provider under the Medical Malpractice Act. The Dodsons also filed a suit in civil district court against the Blood Center and its insurer. The medical review *254 panel rendered its opinion finding no malpractice on the part of Baton Rouge General, but it did note a possible breach of contract by the hospital. Plaintiffs subsequently amended their petition and added Baton Rouge General as a defendant in the civil suit. The hospital answered and requested a jury trial. The State intervened as the worker's compensation insurer of Mr. Dodson. Numerous pleadings, motions and third party actions and exceptions were filed by and between the parties. A pretrial order was signed on November 6, 1991 setting a trial date for June 22, 1992. Baton Rouge General was ordered to post bond for a jury trial by April 10, 1992 and by April 15 for a non-requesting party. However, the bond was never posted. The Dodsons and Baton Rouge General eventually reached a settlement whereby Baton Rouge General agreed to pay $100,000 to plaintiffs, the maximum limits of liability for a provider pursuant to the Medical Malpractice Act. Plaintiffs subsequently settled with the Blood Center, its insurer and the state as the workers' compensation insurer.
Pursuant to La.R.S. 40:1299.44(C), plaintiffs filed a petition seeking court approval of the settlement and declaring their intent to seek excess funds from the Patients' Compensation Fund (PCF). The petition was served on the PCF after which the PCF retained counsel. On June 2, 1992, the court scheduled a hearing on plaintiff's petition for approval of the settlement and an expedited hearing on the demand for damages from the PCF in accordance with the legislative mandate of La.R.S. 40:1299.44(C)(4). The hearing date was set for June 22, 1992.
On June 10, 1992, the PCF filed a motion for continuance and objected to plaintiffs' use of discovery depositions at trial because they were not present at their taking. Cited as reasons for requesting a continuance were: counsel was retained by the PCF on June 9, 1992; the trial date of June 22 had been scheduled before the PCF could timely answer the petition; and the PCF had inadequate time to conduct discovery and review depositions. The motion for continuance was denied. In oral reasons for judgment the court stated this suit was filed on March 9, 1987; pre-trial was held in November, 1991, and the trial date was long-standing; there was no open trial date for six months; and the statute does not indicate that the PCF must be given adequate time for discovery. The trial court stated, the PCF was apparently "stuck with the discovery that was done by the health care provider." The court also overruled plaintiffs' objection to the use of depositions at trial.
The PCF applied to this court for supervisory writs. We issued an order staying the trial or hearing, noting the twenty day delay for filing objections pursuant to La.R.S. 40:1299.44 had not elapsed. No. 92 CW 1143. Plaintiffs' subsequent application to the supreme court for supervisory writs was granted. No. 92 CC 1775. Therein, the supreme court set aside the ruling of this court and reinstated the ruling of the trial court, stating there was no abuse of discretion in the denial of the continuance. The PCF's request for rehearing was denied. We subsequently dismissed the application, No. 92 CW 1143, stating "In view of the Louisiana Supreme Court's order dated June 22, 1992, lifting the stay order imposed by this Court, the issues herein appear to be moot."
The PCF subsequently filed an answer to the petition, objected to the settlement and prayed for a jury trial. Plaintiffs moved to strike the jury request. Their motion was granted by the trial court. The PCF applied to this court for supervisory writs. We denied the application. No. 92 CW 1166. The PCF's application for supervisory writs was denied by the supreme court on June 24, 1992. No. 92 CC 1825.
A hearing/trial was held on June 25, 1992. The PCF reurged its objection to the use of the deposition at the trial/hearing. The objection was again overruled. Judgment was rendered by the trial court which awarded the sum of $325,000 in general damages and $8,963.80 in medical expenses to plaintiffs. The court credited the $100,000 settlement from Baton Rouge General to the general damage award. The court further decreed Mr. Dodson to be in need of future medical care and related benefits, to be paid as incurred in the future. Judicial interest was awarded from March 13, 1987, the date of *255 filing of the claim to empanel the medical review panel on the quantified sums provided for in the judgment. From this judgment the PCF appeals alleging eight assignments of error:
1.
The Trial Court erred in setting a trial date before an answer was filed.
2.
The Trial Court erred in converting a hearing on plaintiff's petition to seek approval of settlement, into a trial on damages.
3.
The Trial Court erred in denying the request for jury trial by the Patient's Compensation Fund in a suit to determine the amount of damages, if any, due from the Fund.
4.
The Trial Court erred in concluding The Patient's Compensation Fund is a successor in interest for a covered health care provider.
5.
The Trial Court erred in denying The Patient's Compensation Fund a reasonable period for discovery on the issue of damages.
6.
The Trial Court erred in approving the use of discovery depositions at trial after objection by The Patient's Compensation Fund, which had not been present or represented at the depositions.
7.
The Trial Court erred in awarding plaintiff $325,000.00 when the evidence from the plaintiff's expert on hepatitis was that plaintiff was recovered and had an excellent prognosis.
8.
The Trial Court erred in awarding plaintiff interest on medical expenses from the date of the request for a Medical Review Panel, rather than interest from the date of the medical care.

LAW OF THE CASE
In the first, second, third, fourth, and fifth assignments of error the PCF contends the "law of the case" principle does not apply to preclude this court from considering on appeal the issues raised in these assignments of error. The PCF contends it did not have sufficient time to adequately brief the issues on writ applications to this court and the supreme court, thus the issues were not adequately and fully considered.
The "law of the case" doctrine applies to all prior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. See Brumfield v. Dyson, 418 So.2d 21 (La.App. 1st Cir.), writ denied, 422 So.2d 162 (La.1982). This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the "law of the case" doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly erroneous. Brumfield v. Dyson, 418 So.2d at 22.
Regarding the action of the supreme court in lifting the stay and reinstating the trial court's ruling denying the continuance, we hold the "law of the case" doctrine applies to preclude relitigation of this matter. The parties to the writ applications and this appeal are the same, and the arguments and *256 issues raised in the writ applications and assignments of error numbers 1, 2, 3, 4 and 5 are the same.
Regardless of the effect to be given the supreme court action, assignments of error 1-5 have no merit. The PCF is not a party defendant in an action under the Medical Malpractice Act. The only party defendant in such an action is the qualified health provider. Williams on Behalf of Williams v. Kushner, 449 So.2d 455 (La.1984). The PCF does not have the status of a La.C.C. art. 2315 defendant. Its status is akin to that of a statutory intervenor with "third-party" interest in the proceedings between a claimant and qualified health care provider because damages in excess of $100,000 are payable by the PCF. Id., at 458 n. 16. Similar to an intervenor, the PCF may "put on evidence and unite with the defendant in resisting the claimant's demand." Id. (emphasis ours). The PCF has the right to intervene to appeal an excess judgment against the PCF. Felix v. St. Paul Fire and Marine Insurance Co., 477 So.2d 676 (La.1985). Similar to a statutory intervenor, the PCF must take the proceedings as it finds them and may not object to the form of the action. La.C.C.P. art. 1094, comment; Williams v. Kushner, 449 So.2d at 458, n. 16.
La.R.S. 40:1299.44(C) prescribes the procedure to be followed when the claimant has settled with the qualified health care provider and intends to seek excess funds from the PCF. The statute provides as follows:
C. If the insurer of a health care provider or a self-insured health care provider has agreed to settle its liability on a claim against its insured and claimant is demanding an amount in excess thereof from the patient's compensation fund for a complete and final release, then the following procedure must be followed:
(1) A petition shall be filed by the claimant with the court in which the action is pending against the health care provider, if none is pending in the parish where plaintiff or defendant is domiciled seeking (a) approval of an agreed settlement, if any, and/or (b) demanding payment of damages from the patient's compensation fund.
. . . .
(4) As soon as practicable after the petition is filed in the court the judge shall fix the date on which the petition seeking approval of the agreed settlement and/or demanding payment of damages from the fund shall be heard, and shall notify the claimant, the insurer of the health care provider or the self-insured health care provider as the case may be, and the board thereof as provided by law.
(5) At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars. (Emphasis ours).

. . . .
Prior to its amendment by La.Acts 1990, No. 967, Sec. 2, La.R.S. 40:1299.42(D)(5) provided: "If such a partial settlement is made, either party shall be entitled to a continuance, which shall not be less than sixty days." This last sentence was deleted by the 1990 amendment. It is unclear whether by "party" the legislature was referring to the provider as nominal defendant or the PCF. However, because that provision was deleted, *257 the Medical Malpractice Act is silent regarding the ability of the PCF to obtain a continuance for any reason, including enabling it to obtain adequate discovery or to obtain a jury trial when the provider has not perfected its request for a jury trial.
Given the status of the PCF similar to that of an intervenor and buttressed by the 1990 amendment to La.R.S. 40:1299.42(D)(5), we hold the PCF had to take the proceedings as it found them once the PCF was brought into the action after Baton Rouge General settled with plaintiffs. This included the PCF's having to proceed with the completed discovery, the use of depositions of expert testimony even though the PCF was not present at their taking, and the status of the jury trial at the time the PCF was served with the settlement proposal and declaration of plaintiffs' intent to proceed against the PCF for excess sums.
After examining the merits we conclude the procedures used were correct. The "law of the case" applies to assignments of error 1, 2, 3, 4 and 5.

USE OF DEPOSITIONS AT TRIAL
In the sixth assignment of error, citing La.C.C.P. art. 1450 the PCF contends the trial court erred in allowing the use of depositions of expert witnesses at trial when the PCF was not present during their taking.
The PCF's reliance on La.C.C.P. art. 1450(A) in its argument is misplaced. This article provides in part:
At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof.... (emphasis ours)
Generally, La.C.C.P. art. 1450 applies to the use of a deposition at trial by a party against another party. As discussed previously, the PCF is not a party to the action. La.C.C.P. art. 1450(A)(5) provides that any party may use the deposition of an expert witness for any purpose upon notice to counsel of record and the right of counsel to object to the use of the deposition. The objecting party must pay the expenses and fees of the experts in order to have their live testimony at trial. "However, the court may permit the use of the expert's deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires." La.C.C.P. art. 1450(A)(5). Thus, even were we to determine that La.C.C.P. art. 1450 is applicable to the PCF in this action, the trial court's permitting the use of the deposition testimony at trial was not an abuse of the discretion allowed the court pursuant to La.C.C.P. art. 1450(A)(5). Further, the PCF apparently did not arrange in advance to pay the fees, expenses and costs required by the article in order to obtain the live testimony of the experts. Additionally, as previously discussed the PCF must take the proceedings as it finds them.

QUANTUM
In the seventh assignment of error the PCF contends the trial court erred in assessing general damages.
Plaintiffs were awarded the sum of $325,000 in general damages. The PCF alleges that the sum of $150,000 in general damages is the maximum to which plaintiffs are entitled, thus quantum should be reduced accordingly.
In Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) (92-C-3017), at page 1261 of the opinion, the supreme court prescribed the standard for appellate review of general damage awards:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges ... is that the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages. *258 Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
A review of the record reveals that Mr. Dodson contracted non-A non-B hepatitis through the blood transfusions received. His condition is periodically monitored. Based on the last tests performed prior to trial, the chronic hepatitis is either resolved or quiescent. He has a good prognosis, however, this prognosis is not guaranteed. There remains a chance that the chronic hepatitis may become active sometime in the future.
In reasons for judgment the trial court found that Mr. Dodson was a credible witness; he did not exaggerate his symptoms, fears or worries about his condition. He stated he believed Mr. Dodson when Mr. Dodson said he felt like a leper and feared infecting his wife, child and friends with the disease. The trial court arrived at what he determined to be an appropriate award for general damages as follows:
So for the past pain and suffering and loss of enjoyment of that period of his life, I think fifty thousand dollars is appropriate. For the past mental anguish and fear of disease and feeling like a leper, I think seventy-five thousand dollars is appropriate. I think his mental anguish was greater than his physical problems. For future mental anguish, any loss or disability, if I give him a low amount and he dies, I didn't give him enough. If he's healthy the rest of his life and maintains the current physical condition he has, which is excellent, then I've given him too much. One of the factors I think we should consider that we don't consider often enough in these things is the inability to be insured. One of the greatest things that a man desires to do if he dies before his wife, which they usually do, is to make sure his wife is taken care of in her old age. Since all the women in my family have outlived their husbands by at least 20 years and sometimes 30 years, it's a very real fear for men that they leave their wife inadequately provided for. I think that is a compensable element, the inability to be insured. I think the appropriate figure for future mental anguish, inability to be insured, fear of dying from a disease, and the probability, although slight, of actually dying from the disease, I think one hundred fifty thousand dollars is adequate. The loss of consortium and the risk of the wife contracting the disease, even though it is small, it's a real risk if you're the one out of a hundred thousand that actually gets it. It should be compensated for fifty thousand dollars....
After careful review of the record and in light of the vast discretion of the trial court to assess general damages, we find no abuse of discretion herein.

INTEREST
In the eighth assignment of error, the PCF alleges the trial court erred in awarding interest on future medical expenses from the date of the request for a medical review panel (March 13, 1987), rather than from the date of medical care. PCF cites Maxwell v. Soileau, 561 So.2d 1378 (La.App. 2d Cir.), writs denied, 567 So.2d 1123, 1124 (La.1990) and Lamark v. NME Hospitals, Inc., 522 So.2d 634 (La.App. 4th Cir.), writ denied, 526 So.2d 803 (La.1988) for this proposition.
The judgment awarded the sum of $8,963.80 for "past" medical expenses. Actually, this award was for expenses incurred after the date of injury and before date of trial. Interest on this sum was awarded from date of filing the request for review of the claim. These expenses comprise a portion of "future" medical expenses as defined in La.R.S. 40:1299.43(B)(1). The court also found that Mr. Dodson was in need of future medical care post-trial with the expenses to be paid as incurred. No provision was made for interest on these expenses.
In Maxwell v. Soileau, 561 So.2d at 1390, and in Lamark v. NME, 522 So.2d at 640, the court awarded interest from the date of filing or the date the expenses were incurred, whichever is later for "future" medical expenses incurred after the malpractice but *259 before date of trial. We follow Maxwell and Lamark and allow interest on medical expenses incurred prior to trial from date of filing or from the date incurred, whichever is later. Consequently, any portion of the $8,963.80 medical expenses that were incurred after filing should run interest from the date incurred. The trial court judgment will be amended to reflect this holding. We make no determination on the accrual of legal interest, if any, on future medical expenses incurred after date of trial since this issue was not assigned as error.
Accordingly, we amend the judgment of the trial court to assess interest on any medical expenses incurred after filing of the complaint and before trial to run from the date the medical expenses were incurred. In all other respects the judgment is affirmed. Costs are assessed against the PCF.
AMENDED AND AFFIRMED.