STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

03-1518

PAUL THOMAS, JR.

VERSUS

BROWNING-FERRIS, INC.

**********
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 00-08926
SAM L. LOWERY, WORKERS COMPENSATION JUDGE
**********

**GLENN B. GREMILLION
JUDGE**

**********

Court composed of Glenn B. Gremillion, Billy Howard Ezell, and *Arthur J. Planchard, Judges.

*Honorable Arthur J. Planchard, Retired, participated in this decision by appointment of the Louisiana Supreme Court as *Judge Pro Tempore.*

                                    AFFIRMED IN PART AND
                                    REVERSED IN PART.


Robert T. Jacques, Jr.
P. O. Box 1883
Lake Charles, LA 70602
(337) 433-4674
Counsel for Plaintiff/Appellee
    Paul Thomas, Jr.

**Tobin J. Eason**
**Weiss & Eason, L.L.P.**
**1515 Poydras Street, Ste 1100**
**New Orleans, LA 70112**
**(504) 528-9192**
**Counsel for Defendant/Appellant**
    **Browning-Ferris, Inc.**

**Michael D. Meyer**
**300 Lafayette St., Suite 202**
**New Orleans, LA 70130**
**(504) 529-4634**
**Counsel for: Defendant Appellant**
    **Browning-Ferris, Inc.**

GREMILLION, Judge.

The defendant, Browning-Ferris, Inc. (BFI), appeals the judgment of the workers' compensation judge finding that the plaintiff, Paul Thomas, suffered a work-related injury from which he is permanently and totally disabled. The judgment further cast BFI with penalties and attorney's fees as a result of its failure to reasonably controvert Thomas' claim. For the forgoing reasons, we affirm in part and reverse in part.

## FACTS

Thomas, a truck driver for BFI, alleged that he suffered a work-related injury to his lower back on March 23, 1998, while attempting to lift a can-load of trash into the back of his trash truck. He claimed that he reported the injury to his helper and to several other drivers when he returned to BFI's office in Oberlin at the completion of his shift. However, he did not report the injury to his supervisor since he was not present at the office. Thomas did not work the following day due to back pain, but had his wife call the office and report his injury.

Thomas was initially treated by Dr. Jeffrey Davis, a chiropractor, but was referred to Dr. William Foster, a neurosurgeon, after an April 16, 1998 MRI revealed a large herniated disc at L4-5. He underwent a hemilaminectomy at L4-5 and was diagnosed post-surgery with partial cauda equina syndrome and foot drop on the left. Dr. Foster continued treating Thomas and eventually found him totally disabled as a result of failed back syndrome with severe neurological deficit (foot drop).

Thomas never requested workers' compensation benefits as a result of

1

this accident. Both he and his wife testified that they were unaware that he was entitled to them. They submitted his medical bills to his wife's insurance and he exhausted his sick leave, vacation time, and received short and long-term disability benefits through BFI.

On November 13, 2000, Thomas filed a disputed claim for compensation seeking workers' compensation benefits as a result of his work-related injury of March 23, 1998. In response, BFI filed an answer and a peremptory exception of prescription arguing that his claim for compensation benefits had prescribed. Following a hearing, the workers' compensation judge denied the exception. Supervisory writs were sought from this court and the Louisiana Supreme Court, but both were denied. *See unpublished writ Thomas v. Browning-Ferris, Inc.*, 01-1561 (La.App. 3 Cir. 1/4/02); and *Thomas v. Browning-Ferris, Inc.*, 02-0236 (La. 2/6/02), 808 So.2d 346.

This matter proceeded to a trial on the merits before Workers' Compensation Judge Constance V. Abraham-Handy. Following the submission of evidence, Judge Abraham-Handy took the matter under advisement. However, before she could render judgment, she passed away. Thereafter, the matter was submitted to Workers' Compensation Judge Samuel Lowery on the evidence and transcript from the prior hearing. On June 16, 2003, the workers' compensation judge rendered oral reasons finding that Thomas suffered a work-related injury on March 18, 1998,[1] that he properly reported the accident to his supervisors, he is permanently and totally

---

[1] Although the workers' compensation judge states that Thomas' injury occurred on March 18, 1998, the disputed claim for compensation and the Employer's Report of Occupational Injury or Disease both stated that the date of injury was March 23, 1998.

2

disabled, and is entitled to indemnity and medical benefits, as well as penalties and attorney's fees for BFI's failure to reasonably controvert his claims. This appeal by BFI followed.

## ISSUES

On appeal, BFI raises four assignments of error. It argues that the trial court erred in finding that Thomas suffered a work-related injury, that his claim had not prescribed, that he was permanently and totally disabled, and for assessing it with penalties and attorney's fees. Thomas answered this appeal requesting additional attorney's fees for work performed on appeal.

## PRESCRIPTION

At the outset, we will address BFI's argument that the workers' compensation judge erred in finding that Thomas' claim had not prescribed pursuant to La.R.S. 23:1209.

BFI's exception of prescription was addressed by both this court and the supreme court via writ applications. Both courts determined that the workers' compensation judge did not err in denying the exception. Thus, these rulings are the "law of the case" on BFI's exception. Although the application of the "law of the case" doctrine is discretionary, it will not be applied if it will "accomplish an obvious injustice or where the former appellate decision was manifestly erroneous." *Dodson v. Comm. Blood Ctr. of La., Inc.*, 633 So.2d 252, 255 (La.App. 1 Cir. 1993), *writs denied*, 93-3158, 93-3174 (La. 3/18/94), 634 So.2d 850, 851. In this instance, we do not find that application of the doctrine will result in an obvious injustice, nor do we find manifest error in the previous appellate decisions. Accordingly, we decline to

3

revisit this issue and will not address the merits of the exception.

## WORK-RELATED ACCIDENT

In its second assignment of error, BFI argues that the workers' compensation judge erred in finding that Thomas experienced an accident during the course and scope of his employment.

In order to receive workers' compensation benefits, a worker must first establish, by a preponderance of the evidence, "personal injury by accident arising out of and in course of his employment." La.R.S. 23:1031(A). As stated in *Bruno v. Harbert International Inc.*, 593 So.2d 357, 361 (La.1992):

> A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La.1979); Malone and Johnson, *13 Louisiana Civil Law Treatise, Workers' Compensation*, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Malone & Johnson, *supra*; *Nelson, supra*. Corroboration may also be provided by medical evidence. *West, supra*.

> In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *West*, 371 So.2d at 1147; *Holiday v. Borden Chemical*, 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Gonzales v. Babco Farms, Inc.*, 535 So.2d 822, 824 (La.App. 2d Cir.), *writ denied*, 536 So.2d 1200 (La.1988) (collecting cases). Indeed, the manifest error/clearly wrong standard of appellate review applies in compensation actions even when the trial court's decision is based solely upon written reports, records or depositions. *Virgil v. American Guarantee and Liability Insurance Co.*, 507 So.2d 825 (La.1987).

4

In finding that Thomas suffered a work-related accident, the workers' compensation judge stated:

> This is a particularly difficult matter to decide because it involves essentially an evaluation of the credibility of the witnesses, especially the claimant. Clearly, there's no better way of doing this than by observing live testimony, which gives the court an opportunity to measure and gauge the demeanor of the witnesses; but we don't have live testimony. However, both counsel were so thorough and precise in their deposing of these witnesses that a careful reading of these depositions I found to be very instructive. It is clear to me, having read this, that on or about March the 18th, 1998 Paul Thomas sustained a work accident during the course and scope of his employment while helping load or unload a garbage truck for his employer. His version of the incident is simply more credible and believable than the version offered by B.F.I.

> During the course of the – one moment here. It is clear that the work accident of Paul Thomas was properly reported and that an investigation ensued. During the course of the investigation, it was alleged that Mr. Thomas was injured away from the workplace; however, I could find no evidence to this effect to support the denial of Mr. Thomas' workers' compensation benefits.

A review of the record reveals that the workers' compensation judge was presented with two differing views of the evidence concerning whether Thomas suffered a work-related injury. Thomas, his wife, and his mother all testified that he injured himself at work while loading trash onto his truck. Thomas and his wife, Diane, both testified that the accident was reported to BFI pursuant to company policy. Thomas stated that he told his helper, Robert Ballard, about his injury as soon as it occurred and told other drivers when he returned to BFI's office in Oberlin, at the end of his shift. He did not tell his supervisor, Tommy Skully, because he was not present.

Diane testified that she came in from work on March 23, 1998, and

5

found Thomas lying on the floor. When she questioned him, she stated that he told her that he hurt his back at work. Diane testified that she called the Oberlin office, the next day at 3:30 a.m., when Thomas' shift started, and told a driver that he would not be working due to back pain. She stated that she did not speak to his supervisor because he did not arrive at work until 8:00 or 9:00 a.m. Both Thomas and Diane testified that BFI never asked Thomas to fill out an accident report or said anything about him receiving workers' compensation benefits. Both stated that they were unaware that he was entitled to such benefits. They further stated that they were told by Skully that BFI would take care of Thomas. Thomas stated that he went along with this because Skully was the boss.

BFI claimed that Thomas did not suffer a work-related injury on March 23, 1998. In support of its claim, it introduced the deposition of Lenda Kirkland, BFI's safety and health manager at the time of Thomas' alleged accident. Kirkland investigated the claim on Thursday, March 26, 1998, after receiving a call the day before that Thomas suffered a work-related injury and wished to receive workers' compensation benefits. After interviewing the drivers, helpers, and mechanic on duty, she determined that Thomas hurt his back over the weekend while working on a lawnmower. She further testified that she based her determination that he did not suffer a work-related accident on the fact that he did not report the accident, he was not injured at work, and the accident was unwitnessed. However, Diane testified that she was unaware that Thomas hurt his back while fixing a lawn mower, nor could she recall his cutting grass in March.

Kirkland and Jeff Jones, BFI's facility manager, who oversees the

6

Oberlin area, testified that BFI's policy requires an employee to immediately report an accident to his supervisor or before leaving work that day. Both stated that the failure to do so could result in termination or a denial of the claim. They further testified that BFI had recently passed out new company policy packets, which included this information, and that Thomas signed his packet showing that he received the information. Both testified that Thomas had attended safety meetings where the need to report work-related accidents was discussed.

Kirkland further testified that she called the Thomases' residence between 2:30 and 3:00 p.m., on March 26, 1998, and spoke to Diane because Thomas was unable to come to the phone. She stated that she told her that Thomas did not qualify for workers' compensation, but that he might qualify for short-term disability. However, Diane denied speaking to Kirkland. She testified that she was at work at the Grand Casino Coushatta, where she is not allowed to take personal calls. Her affidavit was introduced into the record, which contained her time sheet showing that she worked from 7:47 a.m. until 5:25 p.m. on March 26, 1998.

BFI further relies on Dr. Davis' medical records of March 24, 1998, which reports the etiology of Thomas' complaints as being unknown. It further states that the onset of his pain began the week before, and that the pain was worse that day. Thomas denied injuring his back a week prior to March 24, 1998. He further testified that he told Dr. Davis that he injured his back while working. He stated that he was seen immediately by Dr. Davis upon arriving at his office and that his nurse filled out this document while Dr. Davis began treatment. All other medical records of Thomas' treating physicians are consistent with Thomas' version, that he hurt his back lifting

7

a can of trash while working for BFI.

BFI also relies on Thomas' October 1998 long-term disability application. The form asks whether the employee's illness or injury is related to his occupation. The box labeled "No" is checked on Thomas' form. However, Thomas testified that, although he signed the form, he did not fill it out, rather, he thought Diane had done so. He stated that she handles these types of matters for him since he does not read or write very well. Diane testified that she did not fill out this form. Jones testified that the form could have been partially filled out by an employee at BFI's Sulphur office, prior to Thomas signing it.

In reaching his decision, the workers' compensation judge found Thomas' version of how he injured his back more credible than that offered by BFI. Since this finding was based on a decision to credit Thomas' testimony over that of BFI, the workers' compensation judge's finding is entitled to great deference on appeal. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). After reviewing the record in its entirety, we cannot say that this finding is unreasonable. Although there were inconsistencies in Thomas' version, there were also inconsistencies in that provided by BFI. Thus, we will not disturb the finding that Thomas suffered a work-related injury. This assignment of error is dismissed as being without merit.

**DISABILITY**

In its third assignment of error, BFI argues that the trial court erred in finding that Thomas was permanently and totally disabled.

Pursuant to La.R.S. 23:1221(2)(c), an employee, who is neither employed or self-employed, shall receive compensation for permanent and total

8

disability if he proves:

> [B]y clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

The standard of review applied to disability issues was laid out by this court in *K-Mart v. Turner*, 01-0315, pp. 3-4 (La.App. 3 Cir. 10/3/01), 799 So.2d 594, 596, *writ denied*, 01-2973 (La. 1/25/02) 807 So.2d 842 (alteration in original).

> The issue of disability is a factual determination. *Fritz v. Home Furniture-Lafayette*, 95-1705 (La.App. 3 Cir. 7/24/96); 677 So.2d 1132, 1134; *Creel v. Concordia Electric Cooperative, Inc.*, 95-914 (La.App. 3 Cir. 1/31/96); 670 So.2d 406; *writ denied*, 96-0577 (La.4/19/96); 671 So.2d 923. Factual findings of a hearing officer may not be disturbed by an appellate court unless the factual findings are manifestly erroneous or clearly wrong. *Fritz v. Home Furniture-Lafayette*, 677 So.2d at 1134; *Comeaux v. Sam Broussard Trucking*, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449. In order for an appellate court to set aside a hearing officer's factual finding, the appellate court must conclude from the record, viewed in its entirety, that a reasonable factual basis did not exist for the hearing officer's finding and that this finding is clearly wrong. *Guidry v. Picadilly Cafeterias, Inc.*, 95-12 (La.App. 3 Cir. 5/24/95); 657 So.2d 325, *writ denied*, 95-1601 (La.9/29/95); 660 So.2d 870.

> Further, in determining the issues presented on appeal, this court is cognizant of the principals established in *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52 (La.1993). In *Pinkins*, the supreme court stated, "[i]t is well established that this state has long recognized the workers' compensation act is remedial in nature. In order to effectuate the humane policies it reflects, the law is to be liberally construed in favor of the injured employee." *Id.* at 55.

In *K-Mart*, we further stated that the disability must be permanent in order for the employee to receive permanent total disability benefits; such benefits will be denied if the treating physician does not rule out "future improvements or recovery." *Id.* at

597.

Thomas has mainly been treated by Dr. Foster, who, as of July 25, 2000, diagnosed him as suffering from chronic adhesive arachnoiditis with failed back syndrome, along with residual neurological deficit including foot drop. Dr. Foster noted that Thomas had reached maximum medical improvement as of that date and that he was totally disabled. He noted that Thomas was seeing Dr. Kevin Gorin, a physiatrist, for treatment of chronic pain. He further felt that Thomas was unable to return to gainful employment due to his frequent need of pain medication and the significant aggravation of his pain caused by minimal activities such as sitting, standing, and driving. Dr. Foster further noted that Thomas had suffered no intervening injury since his work-related accident. In his notes, he suggests that Thomas seek medical retirement and attempt to obtain Social Security disability benefits. He further noted that Thomas was a good candidate for a stroke or heart attack due to his high blood pressure.

Dr. Dale Bernauer, an orthopedic surgeon, performed a disability examination of Thomas on December 22, 1999. In his report, he noted that Thomas had undergone an extruded disc from which he suffered permanent nerve damage. He determined that Thomas should not lift greater than ten to twenty pounds and that he should not stoop, crawl, or climb on a repetitive basis. He reexamined Thomas on February 25, 2002. At that time, he determined that he was suffering from severe arachnoiditis in his back. He opined that Thomas was disabled from any type of gainful activity and noted that he had scheduled an EMG and MRI for further evaluation.

10

Dr. Gorin's records include a September 17, 1998 letter to Dr. Foster. In his report, he states:

> The patient has been seen in this office on three occasions, including July 1, 1998; August 1, 1998; and September 17, 1998. He has completed approximately 8 weeks of physical therapy. He is currently pain-free and is no longer utilizing AFO. His left leg strength has improved, and he is still having some weakness and limited endurance, but is now functioning independent. The patient has not decided if he will return to gainful employment or take medical retirement.

Dr. Gorin recommended that Thomas begin a daily home exercise program and that an FCE and work conditioning program would be prescribed should he request a return to work. This is the only report contained in Dr. Gorin's records. The record contains no current indications of Thomas' condition at the time Dr. Foster found he had reached maximum medical improvement, on July 25, 2000.

Thomas testified that he is unable to do many activities as a result of his work–related injury. He said that he is unable to walk, sit, stand, or drive for long periods of time, and that he is unable to lift, climb, stoop, or bend. He stated that is able to drive for up to forty-five minutes to an hour, but then has to stop because his left leg becomes numb and weak and his back starts hurting. He further stated that he does the exercises recommended by his doctor and that he walks some at home. Thomas testified that he has a twelfth grade education, but that he does not read or write very well. At the time of the workers' compensation judge's ruling, he was fifty-three years old. He also suffers from high blood pressure. An FCE was attempted on November 27, 2001, but was abandoned due to his high blood pressure.

Diane testified that Thomas drags his left leg as a result of his foot drop and that he is unable to drive long distances, sit through movies, help around the

11

house, do yard work, or change the oil in her car. She further stated that, since his accident, he usually watches television, visits with family and neighbors across the street, and drives his truck to the store around the corner. She also testified that she sometimes has to help him out of bed or out of chairs because of the weakness in his leg.

In support of its argument that Thomas is not permanently and totally disabled, BFI introduced the deposition of Dr. Glenn Anderson, a neurosurgeon. Dr. Anderson examined Thomas for approximately a half hour on December 3, 2001. After reviewing his medical records and performing a neurological evaluation, Dr. Anderson determined that Thomas was not permanently and totally disabled, but was capable of performing light duty/sedentary work. He stated that Thomas waddled when walking, with an exaggerated side to side motion in his upper torso, and that he favored both legs, but greater on the left. He found this gait unusual based on Thomas' symptoms. Dr. Anderson determined that Thomas did not have a complete foot drop on the left, and noted that he did not catch his left foot on the carpet; that he was able to walk and lift his left foot quite freely when leaving the examining room.

Dr. Anderson testified that Thomas was limited in all ranges of motion, flexion, extension, rotation, and lateral flexion and extension, secondary to complaints of twinging pains in his back. He stated that Thomas' reflexes were depressed or diminished in his lower extremities, that the strength in his legs was normal except for dorsiflexion of his left ankle, which he put as four out of five. He stated that testing for nerve root irritation was normal, as was the sensory exam of his

12

lower extremities.

Dr. Anderson further testified that he found inconsistencies in Dr. Foster's reports. On February 17, 1999, Dr. Foster stated that Thomas was unable to return to truck driving or sedentary work. On March 23, 1999, he found Thomas disabled from performing any activities other than sedentary work, but on July 25, 2000, he stated that Thomas was totally disabled. Based on his examination, Dr. Anderson stated that he found Dr. Foster's finding, that Thomas was totally disabled, unusual. He stated that Thomas complained of intermittent pain in his back, but that he was not taking any pain medication at that time. This, he stated brought into question the severity of his pain. He further stated that he found Thomas able to move from his chair to the examining table, and then back to the chair, without significant impairment.

Howard Rowzie, a licensed rehabilitation counselor, attempted to perform an FCE on Thomas on November 27, 2001. However, the evaluation was not completed due to Thomas' high blood pressure during testing, which led to a spell of dizziness. During his interview, Rowzie testified that Thomas said that he could lift and carry five to ten pounds, sit for about thirty minutes, stand between thirty to forty-five minutes, and walk approximately 100 yards on level ground. He stated that Thomas exhibited some pain behavior during his interview, but stated that this behavior had become markedly worse from his observation of Thomas during the workers' compensation hearing. Although he felt that Thomas could be employed, he admitted that he did not have a good comprehension of what he could or could not do, either from his treating physicians, physical therapist, or from the F.C.E.

13

After reviewing the record, we find that a reasonable factual basis exists for the workers' compensation judge's finding that Thomas is permanently and totally disabled. The workers' compensation judge was presented with clear and convincing evidence that Thomas is totally disabled from performing any employment. The only evidence countering this finding is the deposition of Dr. Anderson, who evaluated Thomas on one occasion for approximately thirty minutes, and from Rowzie, who admitted to not knowing Thomas's functional capacity based on the failed F.C.E. However, we do not find this evidence of a sufficient nature for us to find that the workers' compensation judge's determination was either manifestly erroneous or clearly wrong. Accordingly, the judgment of the workers' compensation judge is affirmed; this assignment of error is dismissed.

## PENALTIES AND ATTORNEY'S FEES

In its final assignment of error, BFI argues that the workers' compensation judge erred in assessing it with penalties and attorney's fees for its failure to reasonably controvert Thomas' claim.

Louisiana Revised Statute 23:1201(F) provides that penalties and attorney's fees will be assessed against an employer who fails to timely provide compensation benefits or medical benefits to the injured employee. However, penalties and attorney's fees will not be assessed if the employer reasonably controverted the injured employer's claim or if the "nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2). In *Brown v. Texas-La Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890, the supreme court examined the term "reasonably controverted":

14

The phrase "reasonably controverted," on the other hand, mandates a different standard. In general, one can surmise from the plain meaning of the words making up the phrase "reasonably controvert" that in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits. Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

Furthermore, the decision to award penalties and attorney's fees is a finding of fact subject to the manifest error standard of review. *Id.*

After reviewing the record, we find that the workers' compensation judge erred in assessing BFI with penalties and attorney's fees. Kirkland testified that she determined Thomas did not suffer a work-related accident after conducting an investigation into the matter. She stated that she received the call concerning his claim on the Wednesday after the alleged accident occurred and that she went to Oberlin the next day to conduct an investigation. She stated that she interviewed the other drivers, helpers, and the mechanic on duty in order to learn whether Thomas reported his accident to any of them on the day that it occurred. From these interviews, Kirkland testified that she learned that no one was injured at work on the date in question and that Thomas had injured his back over the weekend while working on his riding lawnmower. She stated that she then determined that a work-related accident had not occurred based on the fact that Thomas was not injured at work, the accident was unwitnessed, and he failed to report the accident the day it occurred.

15

Based on the foregoing, we find that BFI did have valid factual information for denying Thomas' claim. Accordingly, we find that the workers' compensation judge erred in finding that it failed to reasonably controvert his claim. His judgment assessing BFI with penalties and attorney's fees is reversed. Based on this finding, we need not address Thomas' answer to appeal requesting additional attorney's fees for work performed on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the workers' compensation judge assessing Browning-Ferris, Inc. with penalties and attorney's fees is reversed. The costs of this appeal are assessed twenty-five percent to the plaintiff-appellee, Paul Thomas, Jr., and seventy-five percent to defendant-appellant, Browning-Ferris, Inc. In all other respects, the judgment is affirmed.

**AFFIRMED IN PART AND REVERSED IN PART.**