522 So.2d 634 (1988)
Alfred LAMARK, Sr., on his own behalf and on Behalf of his minor children, Alfred LaMark, Jr., Crystal LaMark and Jared LaMark and as Curator of his wife, Helen LaMark, and Reginald LaMark, on his Behalf
v.
NME HOSPITALS, INC., d/b/a Meadowcrest Hospital (Sherman Bernard, Commissioner).
No. CA-8079.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
Writ Denied June 2, 1988.
*635 Joseph W. Thomas, New Orleans, for plaintiffs-appellees.
Ivor A. Trapolin, L. Kevin Coleman and Beth Beasley, Trapolin & Coleman, New Orleans, for defendant-appellant.
Before GULOTTA, C.J., and KLEES and LOBRANO, JJ.
KLEES, Judge.
Plaintiffs-appellees herein are the spouse and children of Mrs. Helen LaMark, who suffered severe hypoxic brain damage after she had ceased breathing for an unknown period of time while in the recovery room of Meadowcrest Hospital following ordinary gynecological surgery. There are seven separate judgments being appealed.
At issue is the proper interpretation of certain provisions of the Louisiana Medical Malpractice Act, La.R.S. 40:1299.41 et seq. By this act, the legislature has created an extensive statutory scheme governing medical malpractice claims brought against persons and institutions such as the defendant who qualify as "health care providers" under the statute. Three primary features of this scheme are: (1) the mandatory submission of all claims to a medical review panel prior to any suit being filed, which requirement may be waived only by consent of all parties (§ 1299.47); (2) a limitation of $500,000.00 plus interest and costs on the total amount of damages recoverable per injured person and a limit of $100,000.00 on the total liability of any one health care provider for all malpractice claims stemming from the injury or death of one person (§ 1299.42); and (3) the creation of the Patient's Compensation Fund (hereinafter "the Fund"), financed by surcharges levied on the health care providers, from which are paid general damages that exceed the $100,000 limitation of liability provided to each health care provider, as well as "future medical care and related benefits," which the statute specifies are to be paid without regard to the $500,000 limit on other damages. (§§ 1299.43, 1299:44).
*636 Proceedings in the Trial Court
In the instant case, neither party disputes that the patient, Mrs. Helen LaMark, is an interdict and in need of lifelong medical care as a result of the incident that occurred in Meadowcrest Hospital on October 4, 1985. Plaintiffs proceeded against NME Hospitals, Inc. (d/b/a Meadowcrest) under the malpractice statute, and the hospital agreed to waive the medical review panel and settle with plaintiffs for the $100,000 limitation on its liability. Following the procedure set forth in R.S. 40:1299.44 (C), plaintiffs then filed a petition seeking court approval of the settlement as well as additional damages from the Fund, and claiming that the $500,000 limitation on damages was unconstitutional. An answer was filed on behalf of the Fund, stating its objections to the petition. On September 5, 1986, after a full evidentiary hearing, the district court approved the settlement and reserved for further adjudication all other issues in the petition.
Plaintiffs then filed a motion for partial summary judgment demanding payment of medical expenses incurred since the date of the incident and seeking an order that the Fund pay future medical care and related benefits as and when incurred. The Commissioner of Insurance opposed the motion on behalf of the Fund. On October 15, 1986, the trial court granted the motion, ordering the Commissioner to pay to the curator of Helen LaMark the sum of $300,000.00, representing "past medical expenses," and to pay "all future medical expenses as and when incurred by Helen LaMark, pursuant to R.S. 40:1299.43(E)." Section 1299.43(E) gives the district court that has issued the judgment continuing jurisdiction in cases where medical care and related benefits have been determined to be needed.
The Commissioner took a devolutive appeal of the summary judgment, which is the first appeal contained in the record of this matter. He refused to pay any interest on the amount awarded. As a result, plaintiffs filed a petition for a writ of mandamus ordering the Commissioner to pay interest on the judgment at the legal rate of twelve percent (12%), which petition was granted by the court on February 20, 1987.
In January and February of 1987, the plaintiffs filed five motions to compel payment of medical expenses from the Fund, seeking amounts of $11,088.33, $5,844.73, $23,559.09, $9,111.71 and $5,616.58, respectively. Each claim represented expenses incurred after the October 1986 judgment with the exception of the $23,559.09, which was for expenses incurred prior to that time. The motions also sought penalties and attorney's fees on the grounds that the Commissioner had unreasonably failed to pay the claims within thirty days of their submission, pursuant to R.S. 40:1299.43(E)(2). These motions were heard along with the petition for mandamus on February 20, 1987, and five judgments were issued on that date awarding the amounts requested as well as five hundred dollars ($500.00) in attorney's fees for each claim except the $23,559.09 claim, for which no attorney's fees were awarded. A sixth judgment awarded the amount of $7,179.12 (plus $500.00 in attorney's fees), which amount had not been claimed by the plaintiffs.
The Commissioner filed a motion for a new trial as to this sixth judgment, which motion was denied without comment. Defendant then filed six motions seeking suspensive appeals of the mandamus judgment and each of the other judgments that were issued on February 20th except the judgment for $23,559.09. The trial judge signed the appeal orders but deleted the word "suspensive" in each. Defendant filed a writ application in this court claiming that the trial judge had unfairly denied his right to a suspensive appeal, which application was denied. Ultimately, however, the Louisiana Supreme Court granted writs on the same point and ordered that the Commissioner be allowed to take a suspensive appeal on the questions of interest (with regard to the mandamus judgment) and attorney's fees (with regard to the other five judgments).
The Issues on Appeal
In terms of the issues on appeal, the seven judgments can be divided into three *637 groups: (1) the summary judgment of Oct. 15, 1986 awarding $300,000 in past medical expenses and future medical expenses as incurred; (2) the mandamus judgment of February 20, 1987 ordering the Commissioner to pay twelve percent (12%) interest on the original amount awarded; and (3) the five judgments of February 20, 1987 awarding medical expenses incurred since the date of the original judgment plus attorney's fees. During oral argument before this court, the parties stipulated that one of those five judgments, which awarded the amount of $7179.12 plus $500.00 attorney's fees, was in error. We therefore vacate that judgment, and address only the issues raised with regard to the other judgments on appeal.
I. The Summary Judgment
Concerning the summary judgment, defendant has three complaints on appeal: (1) The trial judge erred in awarding future medical care and related benefits on a motion for summary judgment prior to a judgment being rendered as to the amount of general damages owed by the Fund; (2) The trial judge erred in ordering the Fund to pay future medical expenses as and when incurred without specifying a total amount or a per annum amount thereof; and (3) The trial judge erred in awarding medical expenses incurred before the date of the hearing as "future medical care and related benefits." We find no merit in these contentions.
All three of the Commissioner's arguments stem from one premise: that the trial judge incorrectly interpreted and applied R.S. 40:1299.43, which deals solely with "future medical care and related benefits." Part (A)(1) of this Section provides that in all malpractice actions tried before a jury, the jury must be given a special interrogatory asking if the patient is in need of future medical care and related benefits and the amount thereof. Similarily, Part (A)(2) states that when such a claim is tried by the court, the court's finding shall include a recitation that the patient is or is not in need of future medical care and related benefits and the amount thereof. Part (B) states that "`future medical care and related benefits' for the purpose of this Section means all reasonable medical, surgical, hospitalization, physical rehabilitation, and custodial services and includes drugs, prosthetic devices, and other similar materials reasonably necessary in the provision of such services," but not "non-essential speciality items or devices of convenience". Part (C) provides that once a judgment is entered (or a settlement with the Fund reached) in favor of a patient who is found to be in need of future medical care and related benefits, the patient may make a claim to the Fund through the office of the state attorney general for all such care and benefits "directly or indirectly made necessary by the health care provider's malpractice unless the patient refuses to allow them to be furnished." Part (D) clarifies that payments of "medical care and related benefits" shall be paid by the Fund without regard to the $500,000 limitation on other damages. Part (E) gives the district court from which the final judgment issued continuing jurisdiction in cases where it has been determined that future medical care and related benefits are needed, and directs the court to award reasonable attorney's fees to the claimant's attorney if it finds that the Fund has unreasonably failed to pay such claims within thirty days of their submission. Finally, the remainder of the statute sets forth and regulates the right of the Fund to have a periodic physical examination done on the patient to determine whether the patient has a continued need for such benefits.
According to the Commissioner, Section 1299.43 gives the patient a right to "one trial and one judgment" determining both the amount of general damages and the amount of future medical care and related benefits. Therefore, argues the Commissioner, the summary judgment awarding future medical care and related benefits before any determination of the extent of other damages was improper.[1]
*638 Our reading of the statute reveals no reason why a judgment on future medical care and related benefits must necessarily await a determination of the primary damages. Summary judgment is always appropriate for any part of the relief demanded as to which plaintiff can show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. La.Code Civ.Pro. art. 966. In any case, the Commissioner's argument is moot because on January 3, 1987, after the summary judgment was issued, the plaintiffs reached a settlement with the Fund whereby the Commissioner deposited into the registry of the court to be withdrawn by the plaintiffs the sum of $400,000, representing the full extent of the Fund's potential liability (the $500,000 limit minus $100,000 already paid by the health care provider). As the amount of general damages has already been determined, we see no point in considering now whether the Commissioner was entitled to a single trial determining both general damages and future medical care.
The Commissioner's second argument is that because the statute says that the court must determine whether there is a need for future medical care and related benefits and "the amount thereof," the trial court erred by awarding expenses for future medical care as incurred without specifying an amount. The Commissioner cites Sibley v. Board of Supervisors of Louisiana State University, 490 So.2d 307 (La.App. 1st Cir.1986), in which the First Circuit had to interpret the language of La.R.S. 40:1299.39 (B), a statute which relates to medical malpractice claims against the state and which incorporates a virtually identical scheme for the recovery of future medical care as does Section 1299.43. In Sibley, the appellate court was instructed by the Louisiana Supreme Court to award medical expenses to the plaintiff following a retroactive amendment to R.S. 40:1299.39 stating that its $500,000 limitation on damages was to be exclusive of future medical care and related benefits. 490 So.2d at 309. Based on the trial court record, which was replete with expert testimony establishing the need for future medical care, the First Circuit analogized the statutory scheme to that governing alimony and child support awards, and thus awarded future medical care in terms of a per annum cap to be paid as the expenses accrue. Id. at 310.
Sibley does not convince us that the trial court should have awarded a total or an annual amount of future medical care in the instant case. In Sibley, there was a dispute as to whether future medical care was necessary; there is no such dispute in the instant case, as defendant admits that Helen LaMark is in need of such care. Although the statute is less than artfully drawn, we think that the provisions in Section 1299.43(A) requiring the jury or the trial judge to determine whether such care is needed and "the amount thereof" contemplate a situation where the need for future care is in dispute. Where such fact is admitted, however, we see nothing wrong with a separate judgment approving each amount of expenses as they are incurred. The statute as a whole confirms our interpretation by providing that future medical expenses are generally to be paid as incurred and by giving the district court continuing jurisdiction for this very purpose. Because the court has continuing jurisdiction, the Commissioner has the opportunity to object to any particular expense as being unreasonable at the time it is submitted for judgment. In short, although the setting of an annual limit on medical expenses damages might be more convenient to the administration of the Fund than the method adopted by the district court, it is not mandated by the statute.
The Commissioner's final argument with regard to the summary judgment can be summed up by the question, "When does the future begin?" Specifically, defendant argues that it was an error for the trial court to award $300,000 for medical expenses incurred prior to the judgment as "future medical care and related benefits." As we have already noted, R.S. 40:1299.43 defines "future medical care and related benefits" not in terms of time, but rather as "all reasonable" medical care. Thus, *639 both the Supreme Court and the First Circuit have interpreted the same phrase in R.S. 40:1299.39 to mean all reasonable medical expenses from the date of the malpractice. Sibley v. Board of Supervisors of Louisiana State University, ill So.2d 1094 (La.1985), on remand, 490 So.2d 307 (La.App. 1st Cir.1986). Although the words of the statute are seemingly contradictory, we think that the interpretation adopted in Sibley is correct. If the statute were to be interpreted as suggested by defendantthat future medical care begins on the date of the judgmentit would render the statute nonsensical and arbitrary. It would be unreasonable for medical expenses incurred before the date of the judgment to be subjected to a statutory limit whereas those incurred after the date of judgment are not. As plaintiff points out, such an interpretation would make his recovery of medical expenses depend on his trial date, a factor over which he has no control.[2]
When a statute is susceptible of more than one interpretation, the court must apply the one that achieves the legislature's intent and best comports with principles of reason and justice. Freechou v. Thomas W. Hooley, Inc., 383 So.2d 337 (La. 1980). Therefore, we find that "future medical care and related benefits" as used in R.S. 40:1299.43, includes all reasonable medical expenses incurred from the date of the alleged malpractice. Accordingly, the trial judge did not err by awarding medical expenses incurred before the hearing date as part of future medical care and related benefits.
II. The Mandamus Judgment
The second judgment being appealed is the mandamus judgment ordering the Commissioner to pay the legal interest of twelve percent (12%) on the $300,000 awarded to plaintiffs in the summary judgment. The Commissioner first argues that the interest is not owed because the summary judgment was improper, which argument we have just addressed. Alternatively, the Commissioner contends that the proper rate of interest is not twelve percent, but six percent, which rate is applicable to personal injury suits against "the state or any department, board, commission, agency, or political subdivision thereof." La.R.S. 13:5112. According to the commissioner, the Fund should be considered a state agency for purposes of this statute.
The Commissioner's argument misses the mark, because, although certain damages are to be paid from the Fund, the lawsuit is against the health care provider alone; the Fund is not a defendant. In Williams on Behalf of Williams v. Kushner, 449 So.2d 455 (La.1984), the plaintiff, a victim of malpractice, settled with the physician/defendant for his statutory limit of $100,000 and then sought excess damages from the Fund. The Commissioner moved to strike the plaintiff's demand for a jury trial on the ground that La.R.S. 13:5105 prohibits a trial by jury against the state. The Supreme Court held that R.S. 13:5105 was inapplicable because a suit under the medical malpractice act is against the health care provider and not against the Fund. The Court reasoned:
From the inception to the conclusion of a medical malpractice proceeding, the action is against only the health care provider. La.R.S. 40:1299.47(A)(1) provides that all "malpractice claims against health care providers" (emphasis added) shall first be reviewed by a medical review panel. If, after an agreement to a settlement, the claimant demands an excess amount from the Fund, a petition is filed by the claimant in the "court in which the action is pending against the health care provider. "Id. § 1299.44(C)(1) (emphasis added). La.R. S. 40:1299.44(B) provides that the only claim against the Fund shall be a request *640 by the commissioner after he receives a certified copy of a final judgment, court approved settlement or final award in an arbitration proceeding "in excess of one hundred thousand dollars against a health care provider" (emphasis added). Hence, the only party defendant contemplated by the medical malpractice act is the health care provider. The Fund is not specified as a party defendant against whom the action can be brought under the act.... Therefore, a medical malpractice action is not a suit against the Fund, and La.R.S. 13:5105 is inapplicable. Because of this holding, we do not reach whether the Fund is a state agency within the definition of La.R.S. 13:5102(A).
Williams, supra, at 458 (Emphasis by the Court; citations omitted; footnotes omitted). In footnotes, the Williams Court stated that since the medical malpractice act authorized suit only against the health care provider, the petition failed to state a cause of action against the Fund, which was a named defendant. Id. at 458 n. 15. The Court characterized the status of the Fund after a settlement has been reached between the patient and the health care provider as a "statutory intervenor," a third person who has an interest in the proceedings and may put on evidence, unite with the defendant in resisting the demand, and appeal a judgment of the court in a contested proceeding. Id. at 458 n. 16.
We adopt the reasoning of the Supreme Court in Williams, and hold that R.S. 13:5112 does not apply to reduce the interest rate on judgments issued in medical malpractice cases. Therefore, the district court was correct in issuing the mandamus judgment compelling the Commissioner to pay interest on the amount awarded at the legal rate of twelve percent (12%).
The Commissioner also complains that the mandamus judgment did not indicate the date from which interest is to be paid. R.S. 40:1299.47(M) provides that legal interest on a judgment rendered in a suit under the medical malpractice act shall accrue from the date of filing of the complaint with the Commissioner of Insurance. Section 1299.43, specifically dealing with future medical care and related benefits, makes no mention of interest. Nevertheless, we do not believe that the legislature intended for interest to be paid from the date of demand on judgment amounts which the statute specifies are to be paid as and when incurred. Therefore, we hold that the interest awarded in the mandamus judgment is payable from the date of the filing of the complaint or the date the expenses were incurred, whichever is later. See Sibley, supra, 490 So.2d at 310.
The Five Judgments Awarding Future Medical Expenses
The sole issue with regard to the five other judgments on appeal is whether the district court's award of attorney's fees was proper. R.S. 40:1299.43(E)(2) states: "The court shall award reasonable attorney's fees to the claimant's attorney if the court finds that the patient's compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits." In this case, the district court awarded five hundred dollars ($500.00) in attorney's fees for each of the five claims. The Commissioner argues that this was improper because the plaintiffs did not submit any evidence to show that the Fund's failure to pay timely was unreasonable. We disagree. There was a hearing before the district judge, at which time the Commissioner attempted to explain the Fund's tardiness by saying that this was an unusually difficult case to process because Mrs. LaMark's private nursing care in her home was costing approximately $5,000.00 per week. After hearing this explanation, the district judge apparently made a determination that the Fund's failure to pay within thirty days was unreasonable. We find no manifest error in this decision. The statute does not require that the plaintiff prove the unreasonableness nor that the trial judge give written reasons for his decision. Accordingly, we decline to overturn the awards of attorney's fees on that basis.
The Commissioner also argues that the amount of attorney's fees awarded was *641 excessive. The trial judge has vast discretion in fixing attorney's fees, which should not be disturbed absent clear abuse. Easterling v. Halter Marine, Inc., 470 So.2d 221 (La.App. 4th Cir.1985), writ denied, 472 So.2d 920 (La.1985). The amounts herein awarded are not so high as to be an abuse of discretion. Therefore, we affirm the judgments in that respect.
Conclusion
Accordingly, for the reasons stated, the judgment of the district court of February 20, 1987 awarding the amount of $7179.12 plus attorney's fees is hereby vacated, and the other six judgments on appeal before this court are affirmed.
AFFIRMED IN PART AND VACATED IN PART.
NOTES
[1] The extent of damages to be paid from the Fund was the only issue to be decided in this instance because the health care provider, by settling with the plaintiffs for its statutory limit of $100,000, admitted liability for the alleged malpractice. R.S. 40:1299.44(C)(5).
[2] Following the decision of the First Circuit in Sibley, supra, 490 So.2d 307, the legislature amended R.S. 40:1299.39 to define "future medical care and related benefits," for the purposes of that Section, as "all reasonable medical ... services ... which each injured patient needs after the date of the filing of his judicial demand." (Emphasis added). As the legislature did not also amend Section 1299.43, we are persuaded that they intended to leave the interpretation to the courts.