911 So.2d 351 (2005)
Robert JORDAN, Plaintiff-Appellee
v.
WILLIS-KNIGHTON MEDICAL CENTER, et al., Defendants-Appellants.
No. 39,944-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
Rehearing Denied October 20, 2005.
*352 Walter F. Clawson, Shreveport, for Appellants, Louisiana Patients Compensation Fund and Louisiana Patients Compensation Fund Oversight Board.
Nelson & Hammons, by John L. Hammons, Cornell R. Flournoy, Shreveport, for Appellee.
Before WILLIAMS, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
This case arises from a granting of summary judgment in favor of Robert Jordan, on behalf of his deceased wife, Gwen Gow. Ms. Gow died in recovery, after undergoing surgery at Willis Knighton-Pierremont Hospital ("WK") in Shreveport, Louisiana. From this ruling, the Louisiana Patient's Compensation Fund ("PCF") now appeals arguing, inter alia, that the trial judge erred in his interpretation of La. R.S. 40:1299.44(C) and that one of Ms. Gow's treating physicians, Dr. Stephen Patton, was not solely responsible for her death, despite his statutory admission of liability up to $100,000. For the reasons set forth herein, we affirm.

FACTS
On March 14, 2000, Gwen Gow was diagnosed and hospitalized with cholecystitis at Willis Knighton-Pierremont. Two days later, Dr. William Eddleman performed a laparoscopic cholecystectomy and intraoperative cholangiogram to correct her condition. At approximately 3 a.m. on the day following her surgery, Ms. Gow went into asystolic cardiac arrest and was pronounced dead approximately seventeen minutes later.[1] The record indicates that, at no time during the evening, was Dr. Eddleman notified by the hospital, attending physicians[2] or attending nurses of Ms. Gow's deteriorating condition.
*353 Ms. Gow's husband, Robert Jordan, initiated a medical malpractice claim against several of her attending physicians (including Dr. Patton) and WK on September 18, 2000. In his suit against WK, Mr. Jordan sought recovery for damages arising out of Ms. Gow's death (her pain, suffering, grief and mental anguish, loss of the opportunity for survival, fear and impending doom and funeral expenses) as well as his own loss of consortium, mental anguish, distress, grief and funeral expenses connected with his wife's death.
On December 16, 2002, a judgment was signed approving a settlement between Mr. Jordan and Dr. Patton and his medical insurer for the sum of $100,000 and reserving rights against the PCF. The terms of this settlement agreement included an admission of liability by Dr. Patton in accordance with the Louisiana Medical Malpractice Act ("LMMA").
A motion for summary judgment on damages owed by the PCF (in excess of the $100,000 settlement) was filed by Mr. Jordan. The trial court ruled in favor of Mr. Jordan in the amount of $401,600.31 ($400,000 in damages plus $1,600.31 in funeral expenses). This appeal ensued.

DISCUSSION
This case turns on the application of La. R.S. 40:1299.44(C), which was amended in 2003. The pre-amended version was silent on the issue of assessing the fault of third party qualified health care providers to limit the liability of the PCF. The pre-2003 amendment version read, in pertinent part:
At the hearing the board, the claimant, and the insurer of the health care provider or the self-insured health care provider, as the case may be, may introduce relevant evidence to enable the court to determine whether or not the petition should be approved if it is submitted on agreement without objections. If the board, the insurer of the health care provider or the self-insured health care provider, as the case may be, and the claimant cannot agree on the amount, if any, to be paid out of the patient's compensation fund, then the court shall determine, the amount of claimant's damages, if any, in excess of the amount already paid by the insurer of the health care provider. The court shall determine the amount for which the fund is liable and render a finding and judgment accordingly. In approving a settlement or determining the amount, if any, to be paid from the patient's compensation fund, the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of one hundred thousand dollars, or where the self-insured health care provider has paid one hundred thousand dollars.
The 2003 amendment changed the statute by adding language for assessing the third party fault of a qualified health care provider when one of six factors is present. The post-2003 version of the statute reads, in pertinent part:
(c) The board may apply the provisions of Civil Code Article 2323 or 2324, or both, to assert a credit or offset for the allocated percentage of negligence or fault of a qualified health care provider provided at least one of the following conditions is met:
(i) A payment has been made to the claimant by, in the name of, or on behalf of the qualified health care provider whose percentage of fault the board seeks to allocate.
(ii) A payment has been made to the claimant by, in the name of, or on behalf of another qualified health care provider in order to obtain a dismissal or release of liability of the qualified health care provider whose percentage of fault the *354 board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.
(iii) All or a portion of a payment made by another qualified health care provider, by the insurer of another qualified health care provider, or by the employer of another qualified health care provider has been attributed to or allocated to the qualified health care provider whose percentage of fault the board seeks to allocate, provided that there shall be no separate credit or offset for the fault of an employer or other vicariously liable entity who was not independently negligent or otherwise at fault and who makes a payment in order to obtain a dismissal or release of liability of a single qualified health care provider for whom the payor is vicariously liable.
(iv) A medical review panel has determined that the qualified health care provider whose percentage of fault the board seeks to allocate failed to comply with the appropriate standard of care and that the failure was a cause of the damage or injury suffered by the patient, or a medical review panel has determined that there is a material issue of fact, not requiring expert opinion, bearing on liability of the qualified health care provider whose percentage of fault the board seeks to allocate for consideration by the trier of fact.
(v) The qualified health care provider does not object within thirty days after notice of the board's intention to allocate the health care provider's percentage of fault is delivered via certified mail to the plaintiff, the qualified health care provider, and the qualified health care provider's professional liability insurer or to their attorneys.
(vi) The court determines, after a hearing in which the qualified health care provider whose percentage of fault the board seeks to allocate shall be given an opportunity to appear and participate, that there has been collusion or other improper conduct between the defendant health care providers to the detriment of the interests of the fund.
The trial judge in the case sub judice, found that the 2003 amendment was substantive in nature and, thus, applies prospectively only. Accordingly, the trial judge concluded that the pre-2003 amendment version of this statute applies in this case. He went on to find that under the pre-2003 version of La. R.S. 40:1299.44(C), the PCF could not assert third party fault against a qualified health care provider. He stated that Mr. Jordan adequately satisfied his burden on summary judgment and noted that the PCF did not provide adequate evidence to contradict the motion. Accordingly, he ruled in favor of Mr. Jordan. From this judgment, the PCF appeals, alleging the following assignments of error (verbatim):
Assignment of Error One: The trial court erroneously concluded that prior to the 2003 amendment to La. R.S. 40:1299.44(C), the Louisiana Patients' Compensation Fund could not assert third party fault against a qualified health care provider.
Assignment of Error Two: The trial court erroneously concluded that there was sufficient evidence supplied by the plaintiff to determine that Dr. Patton was solely responsible for all damages suffered by the plaintiff.

Assignment of Error Three: The trial court erroneously found that Dr. *355 McCormick, a forensic pathologist, demonstrated sufficient expertise to opine on a living patient's life expectancy.

Due to the inter-relatedness and complexity of the issues in the case sub judice, we will address all three assignments of error asserted in this case collectively.
The PCF initially argues that Mr. Jordan's Motion for Summary Judgment should have been denied as several issues of material fact exist precluding the summary judgment. It states that the amount of damages is a question of fact that is properly determined by a jury. The PCF argues that no evidence has been provided regarding the factual background of this case; and, accordingly, it is impossible to accurately determine "whether or to what extent Dr. Patton's ... liability was the source of all damages in excess of $100,000."
The PCF cites Graham v. Willis-Knighton Medical Center, 97-0188 (La.1997), 699 So.2d 365, in which the court stated that a statutory admission of liability notwithstanding, the plaintiff continues to bear the burden of proving causation of damages in excess of $100,000. It asserts that there is no medical evidence proving that Ms. Gow's death was caused (solely) by Dr. Patton's breach of the standard of medical care; that there is no causal link between his admitted liability and the damages claimed by Mr. Jordan and that reasonable minds could differ as to the proper amount of damages.
The PCF further argues that La. R.S. 40:1299(C)(5)(c)(i)-(vi), argued by both parties in this case, is inapplicable. Under this statute, the PCF would be required to prove at least one of the six factors applied before being allowed to assert third party fault. The PCF concedes, however, that none of the six aforementioned criteria apply to this case. The PCF asserts that the trial court was correct in ruling that the pre-2003 version of the law applies, but disagrees with the trial court's application of the law insofar as it applies to asserting the third party fault of a qualified health care provider.
The PCF argues that this court is bound by the ruling in Hall v. Brookshire Bros., Ltd., 02-2404 (La.6/27/03), 848 So.2d 559.[3] In Hall, the supreme court held that the PCF could defend itself by asserting negligence of a third party not being sued by the plaintiff. The PCF states that the supreme court made no distinction between qualified or non-qualified third parties asserted by the plaintiff. The PCF points out that in Hall, supra, the supreme court stated, however, that "[t]hese provisions evidence an intent by the Legislature that the [PCF] be able to limit its liability by demonstrating that the negligence or liability of another caused the plaintiff damages." (Emphasis PCF's.) From this language, the PCF states that it should be allowed to assert third party fault in this case.
The PCF further cites Conner v. Stelly, XXXX-XXXX (La.1/30/02), 807 So.2d 827, in which the supreme court stated:
Accordingly, that portion of the trial court's judgment prohibiting the PCF from arguing or presenting evidence before *356 the jury that victim or third-party fault caused any of the damages in this case is reversed.
In summary, the PCF argues that the amount of damages due in this, and any other case, is a question of fact that is properly determined by the jury. It states that reasonable minds can differ on the amount of damages that could (should) be awarded in the case sub judice; and, for these reasons, the trial judge was erroneous in ruling as he did.
The PCF argues, in its second assignment of error, that the trial court erred by finding that "Dr. Patton alone was [implicitly]... responsible for all of the damages [suffered by Ms. Gow in this case]." To this end, the PCF renews its argument from assignment of error number one, supra, that no factual foundation was laid in this case to prove that Dr. Patton was the sole source of all damages in excess of $100,000.
The PCF cites Perkins v. Coastal Emergency Med. Servs., 01-0660 (La.5/4/01), 791 So.2d 644, in which the supreme court reversed the third circuit's upholding of a summary judgment for the statutory maximum to a surviving spouse and remanded the case for trial. In Perkins, supra, the PCF asserted that the trial court's grant of summary judgment in favor of the surviving spouse was erroneous because of issues concerning causation. Particularly, the court noted a lack of evidence that the settling health care provider's statutorily admitted malpractice alone caused all of the damages claimed. In summation, the PCF states that the documents submitted by Mr. Jordan are insufficient to support the granting of a motion for summary judgment.
In response, Mr. Jordan states that a "thorough and succinct" analysis of this issue is found in Turner v. Southwest Louisiana Hosp. Ass'n., 03-0237 (La.App. 3d Cir.10/1/03), 856 So.2d 1237, writ denied, 04-0826 (La.6/4/04), 876 So.2d 89, that is a factually similar case, in which the plaintiffs filed a medical malpractice claim against a hospital, one surgeon and one nurse on behalf of their minor child, who died one night after an apparently successful surgery. The medical review panel concluded that the surgeon's actions more than likely resulted in the minor child's death, but no specific allegations were ever proven in court because the doctor admitted liability by paying $100,000 in settlement in accordance with La. R.S. 40:1299.44. The third circuit concluded that the evidentiary ruling was correct and, to support its decision, quoted Stuka v. Fleming, 561 So.2d 1371 (La.1990), cert. denied, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525, which stated:
We recognize that this literal interpretation of the statute affords less rights to the Fund when claims against multiple health care providers are settled than when such claims are tried. In the case of a trial the Fund has the opportunity for reduced exposure when more than one health care provider is determined to be liable. But in the case of a settlement with one health care provider for $100,000 the Fund does not have this opportunity in the subsequent litigation with the victim.
However, the Legislature chose in cases of settlement simply to declare the admission of liability by the $100,000 payment of one health care provider and did not provide for the Fund's affirmative right to litigate liability on the part of any other named or unnamed health care providers.
To this end, Mr. Jordan states that the third circuit's analysis in Turner, supra, "offers clear guidance to this [h]onorable court."
*357 Mr. Jordan further asserts that it is "critically important to understand that the [LMMA] did not grant authority to the PCF to raise third party fault of a qualified health care provider until its amendment in 2003." (Emphasis Mr. Jordan's.) He points out that, prior to that time, the LMMA limited the authority of the PCF to raise third party fault only of a "non-covered health care provider or a product manufacturer" as follows:
(x) Defend the fund from all claims due wholly or in part to the negligence or liability of anyone other than a qualified health care provider regardless of whether a qualified health care provider has settled and paid its statutory maximum or has been adjudged liable or negligent.
(xi) Defend the fund from all claims arising under R.S. 40:1299.44(D)(2)(b)(x) and obtain indemnity and reimbursement to the fund of all amounts for which anyone other than a qualified health care provider may be held liable. The right of indemnity and reimbursement to the fund shall be limited to that amount that the fund may be cast in judgment.[4]
He asserts that the absence of any statutory language regarding the issue of third party fault of a qualified health care provider reflects the legislature's intent to deny the PCF the right to raise that affirmative defense prior to the amendment.[5]
Mr. Jordan states that the authority of the PCF was extended by the legislature in 2003 under La. R.S. 40:1299.44 C(5)(c)(i)-(vi), which permits the PCF to raise third party fault of a qualified health care provider in the event that one of the six specific criteria is met. Even if the post-amendment version applies, he reiterates that the PCF's attorney stipulated in oral argument that none of the six aforementioned criteria were met. Stated another way, according to Mr. Jordan, even if the law allowing the defense to be raised was held to apply, third party fault of WK or its staff may not be raised as an affirmative defense by the PCF in the case sub judice.
Mr. Jordan further notes that the PCF offered no expert testimony or similar evidence to refute the affidavit by Dr. McCormick regarding Ms. Gow's life expectancy or the cause of her death.[6] Accordingly, he asserts that this "uncontroverted testimony must be accepted as true."
Mr. Jordan argues that the PFC's reliance on Hall, supra, is misplaced and that the PCF "glaringly overlooked and failed to discuss clear statements made ... in Hall ..." He states that the court in Hall, supra, noted a specific provision (La. R.S. 40:1299.44(D)(2)(b)(x)[7]) in the LMMA *358 allowing the PCF to assert the fault of a non-covered health care provider or product manufacturer, not a qualified health care provider. Accordingly, he maintains that the PCF may not assert fault in this case against WK or any other treating physician who is a qualified health care provider under the Act.
Mr. Jordan further responds that the PCF's reliance on Conner, supra, is misplaced. He states that the supreme court "without explanation nor reference" to the LMMA made a singular comment, i.e.:
Accordingly, that portion of the trial court's judgment prohibiting the PCF from arguing or presenting evidence before the jury that victim or third-party fault caused any of the damages in this case is reversed. In all other respects, the application is denied. Case remanded to the trial court for further proceedings.
Mr. Jordan points out that, on subsequent review by the third circuit[8] in Conner, supra, third party fault was never raised by the PCF and was never at issue in that case. To this end, he argues that the above-stated supreme court language represents "mere dicta" and offers no support to the case sub judice.
Finally, Mr. Jordan argues that the PCF owes a duty of good faith under the LMMA to both malpractice claimants and health care provider members. Accordingly, he states that for the PCF to raise third party fault against one of its own members, without statutory authority, would clearly violate this duty of good faith and be contrary to public policy.
In its third and final assignment of error, the PCF points out that Dr. McCormick, a forensic pathologist, submitted two affidavits, which stated that he could not conclude that Ms. Gow's attending physicians committed error in their treatment. From this, the PCF deduces that it cannot be said with certainty that Dr. Patton alone was responsible for all of Ms. Gow's injuries, but, rather, that all of her treating physicians are collectively responsible. The PCF points out that Dr. McCormick's second affidavit, regarding Ms. Gow's life expectancy, concluded that there was no medical basis concluding that she was in imminent danger of death.
The PCF cites Moody v. United Nat. Life Ins. Co., 98-287 (La.App. 5th Cir. 1998), 743 So.2d 680, writ denied, 98-2713 (La.12/18/98), 734 So.2d 639, for the proposition that the question of causation is a material issue of fact for the purposes of a motion for summary judgment. It also cites a bevy of other jurisprudence regarding the use of a motion for summary judgment as a procedural device, the burden of the movant in a motion for summary judgment and more.
In response, Mr. Jordan points out that his attorneys submitted the additional affidavit from Dr. McCormick, who performed the autopsy on Ms. Gow. On the second page of the affidavit, Dr. McCormick stated that removal of Ms. Gow's gallbladder would have improved her quality of life and potentially extended her life several *359 years. He further states that there was no basis to conclude that she was in imminent danger of death or serious impairment, even given her underlying medical maladies.
Mr. Jordan asserts, again, that the PCF offered no affidavit or similar evidence to contradict Dr. McCormick's opinion, but, rather, chose to claim that Dr. McCormick's opinion was flawed because it was not based on life expectancy tables. In response, Mr. Jordan argues that the PCF's assertion that Dr. McCormick should have relied on these statistical tables is without merit as their use would not have taken into account Ms. Gow's particular condition.
Mr. Jordan cites La. C.C.P. art. 967(B), infra, and Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La.2/29/00), 755 So.2d 226, for the proposition that Louisiana has recognized that expert opinion testimony in the form of an affidavit or deposition may be considered in support or in opposition to a motion for summary judgment. Accordingly, he argues that Dr. McCormick's affidavit is uncontroverted and must be taken as true. We agree.
We first note that the LMMA is special legislation in derogation of the general tort law and, thus, must be strictly construed. Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992). Our initial conclusion is that the trial judge correctly ruled that the pre-2003 amendment version of the law applies in the case sub judice. We further find that the trial court correctly concluded that the PCF may not, in this case, assert the third party fault of a qualified health care provider to reduce its liability. Given the strict language of Sewell, supra, we note that the legislature did not expressly provide for the PCF to assert the third party fault of a qualified health care provider. Further, Hall, supra, which was relied upon by the PCF, is limited in its applicability here as the pharmacist in that case was not a qualified health care provider who was statutory encompassed by then-existing (pre-amendment) La. R.S. 40:1299, et seq. Similarly, our review of jurisprudence prior to the aforementioned 2003 amendment reveals no supreme court decision permitting the PCF to assert third party fault of a qualified health care provider.
Assuming, arguendo, however, that the post-2003 version of this statute was to apply, the PCF would still be prohibited from asserting third party fault. The PCF's counsel admitted, and the record fully supports, that none of the six criteria enumerated in La. R.S. 40:1299(C)(5)(c)(i)-(vi) apply in this case, limiting its applicability markedly.
Given our conclusion that the trial judge correctly ruled that the pre-2003 law applies and that the PCF may not assert third party fault of a qualified health care provider, the question, then, becomes what amount of damages Ms. Gow may recover against the PCF. In this case, Mr. Jordan filed a motion for summary judgment on this precise issue. La. C.C.P. art. 966 states, in pertinent part:
A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
....
B. The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. *360 The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
In this case, Mr. Jordan supported the motion for summary judgment with the affidavits of Dr. McCormick. The affidavit submitted stated, inter alia:
During the postoperative period [Ms. Gow] sustained progressive hypotension which eventuated in her cardiac arrest and death.
....
At autopsy, death was found to be due to hemoperitoneum due to hemorrhaging from the operative site of the gallbladder bed.
....
While any illness, including those [listed earlier in the affidavit], can adverse the quality of life experienced by the individual, it is clear from the autopsy findings and the medical records ... that Ms. Gow should have fully and completely recovered without incident but for the admitted malpractice of Dr. Patton.
There is no reason to believe that Ms. Gow would not have been able to return home to her former lifestyle and standard of living, and there is no reason to believe that she would not have lived for at least several years with approximately the same quality of life that she had experienced prior to the onset of her cholecystitis (gallbladder problems). The removal of her gallbladder would not have worsened her health or quality of life; rather, because she had a diseased gallbladder, it removal would actually have improved her quality of life.
There is absolutely no medical basis for concluding that Ms. Gow was in imminent danger of death or any other serious deterioration in her health as of the date that she died other than the obvious implications of the admitted malpractice of the defendant which deprived her of the opportunity to receive appropriate medical care which should have detected and resolved the hemorrhage that was secondary to surgery. Had appropriate surgical intervention occurred on a timely basis, the hemorrhage should have been controlled and Ms. Gow should have made a full and complete recovery.
In response to this well-pleaded motion for summary judgment, the PCF was required to show the existence of a genuine issue of material fact to overcome the motion. In our view, this they did not do. La. C.C.P. art. 967(B) states, in pertinent part:
B. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
The trial court recognized the PCF's failure to meet its burden and succinctly stated:
So that said, we look at the motion for summary judgment, and I believe that the affidavits and the attachments, without the issue of Willis Knighton, really *361 don't leave any material fact in dispute as to liability, as to causation, in excess of a hundred thousand dollars. The damages, I'm in a more unusual circumstance with because it's a case where a lady died due to malpractice, and it's unusual to try to prove at least $400,000 of loss, in a situation like that, through summary judgment. However, the attachments, the affidavits with no countervailing affidavits, and only the argument as to [Ms. Gow's] general physical condition, leave the Court without a doubt that the damages exceed the [statutory minimum]. And I said, it's an unusual situation, but looking at the attachments and the lack of opposition as to the quantum, I don't see how a contrary result could be obtained. (Emphasis ours.)
In the absence of documentary evidence supporting the PCF's opposition of the motion for summary judgment, we are constrained to find the trial court's grant of the motion as proper. Given the statutory provisions and jurisprudence applicable in this case, we see no reason to disturb the trial court's ruling in this matter.

CONCLUSION
For the reasons set forth herein, the judgment of the trial court granting the motion for summary judgment in favor of Plaintiff/Appellee, Robert Jordan, as surviving spouse of Gwen Gow, is affirmed. Costs of this appeal are assessed to Willis-Knighton Medical Center, et al.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, PEATROSS, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The record indicates that an autopsy was performed immediately after Ms. Gow's death by Dr. George McCormick, who stated that the cause of death was due to a hemoperitoneum due to hemorrhaging from the operative site of the gallbladder bed.
[2] Between the performance of her surgery and her untimely death, Ms. Gow had several attending physicians, namely: Dr. Eddleman, Dr. Stephen Patton, Dr. Michael Rokaw, Dr. Jerome Danzell and Dr. Jerry Davis. Dr. Patton was Ms. Gow's attending physician the night she died; however, the record indicates that he was not contacted by the nursing staff after 1:30 a.m. regarding any changes in her condition. This suit was originally filed against Dr. Patton, WK and Dr. Jerome Danzell; however, the latter two were "apparently dismiss[ed]" according to the PCF's brief. Dr. Patton settled in this case for the statutory amount of $100,000.
[3] In Hall, supra, the jury was allowed to consider the third party fault of a Brookshire Brothers pharmacist following payment by the qualified health care provider of his statutory maximum of $100,000, with a full reservation of rights against the PCF. The court allowed the jury to consider the third party fault of the pharmacist; however, because neither the pharmacist nor Brookshire Bros., Ltd. was a qualified health care provider, the PCF's right to raise his third party fault was statutorily encompassed by then existing law. La. R.S. 40:1299.44 D(2)(b)(x) and (xi), supra.
[4] See La. R.S. 40:1299(D)(2)(b)(x)-(xi).
[5] The legislative history of the statute reflects the assertion made by Mr. Jordan stating, in part:

Also, Acts 2003, No. 882, § 1, in item (D)(2)(b)(x), substituted "anyone other than a qualified health care provider" for "a non-covered health care provider or a product manufacturer, or both" and "qualified" for "covered"; and in item (D)(2)(b)(xi), substituted "anyone other than a qualified health care provider" for "the non-covered health care provider and/or product manufacturer".
[6] In brief, Mr. Jordan buttresses this assertion by stating that "[t]he PCF has presented no evidence as required by Louisiana Code of Civil Procedure Article 966 to oppose Dr. Jordan's motion for summary judgment." Article 966 is cited and discussed, infra.
[7] This portion of the statute reads:

(x) Defend the fund from all claims due wholly or in part to the negligence or liability of anyone other than a qualified health care provider regardless of whether a qualified health care provider has settled and paid its statutory maximum or has been adjudged liable or negligent.
[8] See, Conner v. Stelly, 02-549 (La.App. 3d Cir.10/30/02), 830 So.2d 1102, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 540, and writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 551. This court's review of Conner, supra, reveals the following:

Prior to the trial, Jerrilyn Conner settled her claim against Dr. Stelly in the amount of $100,000.00 on January 26, 1999. Additionally, Conner reserved the right to proceed against the PCF for amounts exceeding $100,000.00. Lake Area Medical Center was dismissed as a defendant when Dr. Stelly took sole responsibility for committing medical malpractice. (Emphasis ours.)
Accordingly, this court agrees with Mr. Jordan's interpretation of Conner, supra, i.e., that third party fault was not at issue in that case.