940 So.2d 54 (2006)
Thomas MILLER and Sandra Miller, Individually and on Behalf of their Deceased Daughter, Tiffany Michelle Miller, and Jennifer Miller (Daughter of Tiffany Miller), Plaintiffs-Appellees
v.
Willis-Knighton BOSSIER, Christus Schumpert Medical Center and Susan Shattuck, M.D., Defendants.
No. 41,476-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 2006.
Rehearing Denied October 26, 2006.
*56 Walter F. Clawson, Shreveport, for Appellant, Louisiana Patients' Compensation Fund and Louisiana Patients' Compensation Fund Oversight Board.
Nelson & Hammons, by John L. Hammons, Phylliss B. Hennessee, Shreveport, for Appellees.
Before BROWN, GASKINS & PEATROSS, JJ.
PEATROSS, J.
This medical malpractice action arose from the deaths of 16-year old Tiffany Miller and her infant daughter, Jennifer. The present appeal is from a granting of a motion for summary judgment in favor of Tiffany's parents, Thomas and Sandra Miller.[1] For the reasons stated herein, the judgment of the trial court is amended and, as amended, is affirmed.

FACTS
On October 28, 2001, at approximately 1:00 a.m., Tiffany, at 40 1/2 weeks gestation, presented at Willis-Knighton Medical Center in Bossier ("Willis-Knighton") with nausea, vomiting, diarrhea, abdominal pain and coughing. She was given Vistril and released without seeing a doctor. Around 11:00 p.m., Tiffany went to the emergency room of Christus-Schumpert Medical Center ("Schumpert") complaining of headache, nausea, vomiting, contractions and swelling. Tiffany was examined and admitted. She had had late prenatal care from the parish health unit and her records were, therefore, not available to the hospital when she was admitted. Her contractions were mild and irregular and her water had not yet broken.
Dr. Susan Shattuck was consulted (she was taking call for Dr. Mercer, the obstetrician on call that evening). Three calls were placed to Dr. Shattuck overnight regarding Tiffany's care. She was first placed on IV antibiotics and lab work was ordered, as was pain medication. The second consult resulted in cough medicine being ordered. At 6:00 a.m., Dr. Shattuck ordered that Tiffany be placed on a pitocin drip. Between 6:00 and 7:00 a.m., Dr. Shattuck arrived and examined Tiffany. She found her showing signs of respiratory distress. At this point, the fetal heartrate was 168 and Tiffany's pulse was 146. She was breathing rapidly, with cyanosis of the lips and nailbeds. Dr. Shattuck ordered a pulmonary consult. Shortly thereafter, an emergency C-section was ordered. At approximately 8:00 a.m., Tiffany was taken to the operating room, was intubated and fluid was removed from her airway and lungs. The baby was still-born and efforts to resuscitate Tiffany and the baby were unsuccessful.
*57 The instant suit was filed by Tiffany's parents, Thomas and Sandra Miller, naming as defendants Willis-Knighton, Dr. Shattuck and Schumpert. Willis-Knighton and Dr. Shattuck were dismissed on summary judgment and Schumpert settled for $100,000, thus admitting liability under the Medical Malpractice Act. The Millers reserved their right to proceed against the Patient's Compensation Fund ("PCF") and, subsequently, filed a claim against the PCF seeking an additional $400,000 plus special damages. The Millers then filed a motion for summary judgment on that claim, which was denied by the trial court, and this court denied writs. The Millers filed a second motion for summary judgment, which the trial court granted, awarding them general damages of $400,000, medical expenses of $9,981.90 and $10,000 for funeral and burial expenses, plus legal interest.

ACTION OF THE TRIAL COURT
On consideration of the motion for summary judgment and the opposition thereto, the trial judge struck several attachments to the PCF's opposition to the motion for summary judgment. He struck a letter from a physician because it was not sworn and autopsy reports and medical articles for not being in proper form. An affidavit from Schumpert Nurse Linda Dessommes was stricken because the trial judge found it went only to causation. The trial judge opined that "[c]ausation has already been decided" by virtue of the $100,000 settlement, citing Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365.
Citing Jordan v. Willis-Knighton Medical Center, 39,944 (La.App.2d Cir.9/21/05), 911 So.2d 351, writ denied, 05-2340 (La.3/17/06), 925 So.2d 542, the trial judge next found that it did have the authority to grant summary judgment in this case.[2] Quoting extensively from Jordan, the trial judge further found that the PCF did not submit countervailing affidavits that were legally sufficient to create a genuine issue of material fact in opposing the Millers' well-pleaded motion. He opined that the Millers' motion and affidavits clearly established damages that would exceed $400,000 for two persons who lost their lives due to the malpractice of Schumpert. He also awarded funeral expenses and medical bills, citing Lamark v. NME Hospitals, Inc., 522 So.2d 634 (La.App. 4th Cir.1988), writ denied, 526 So.2d 803 (La. 1988).
The PCF now appeals.

DISCUSSION
Before discussing the propriety of the trial court's granting of the motion for summary judgment, we will address the issue concerning the legal effect of the $100,000 settlement with Schumpert. As previously noted, the trial court stated in its reasons for judgment that "causation" had already been decided by virtue of the settlement. In the recent case of Williams v. Enriquez, 40,305 (La.App.2d Cir.11/17/05), 915 So.2d 434, this court explained:

*58 In 1975, the legislature enacted the MMA to establish a framework for compensating persons who are injured as a result of medical malpractice committed by qualified health care providers. Hanks v. Seale, 04-1485 (La.6/17/05), 904 So.2d 662. The MMA limits the liability of a single qualified health care provider to $100,000, plus interest. Id., citing La. R.S. 40:1299.42(B)(2). Any damages awarded or agreed to in excess of $100,000 may be recovered from the PCF, a legislatively created entity which holds private monies in trust to compensate victims of medical malpractice and to protect qualified health care provider members who may be liable for damages caused by their malpractice; however the total amount recoverable, exclusive of future medical care and related benefits, shall not exceed $500,000 plus interest and costs. Id., citing La. R.S. 40:1299.42(B)(1) and (3); Griffin v. Louisiana Patient's Compensation Fund Oversight Bd., 04-0613 (La.App. 1st Cir.3/24/05), 907 So.2d 90. Future medical care includes all past, present, and future medical and related care services necessitated by a qualified health care provider's malpractice. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210.
* * *
Although the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of $100,000, pursuant to La. R.S. 40:1299.44(C)(5), the plaintiff retains the burden of proving that the malpractice at issue caused damages in excess of the $100,000 settlement. Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. When a health care provider tenders payment of $100,000, thereby admitting and establishing liability, that admission of liability is an admission of fault and causation of damages of at least $100,000. It is not an admission of the percentage of fault attributable to the health care provider; nor is it an admission as to the extent of the claimant's damages beyond $100,000. Id. (Emphasis added.)
Applied to the instant case, the above principle dictates that liability on the part of Schumpert was admitted via the settlement. In addition, causation for the resulting damages was established up to $100,000. The Millers retained the burden of proving damages caused by Schumpert's malpractice in excess of $100,000 and up to the statutory cap of $500,000. This is the burden, therefore, against which the Millers' motion for summary judgment must be viewed.
In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Ocean Energy, Inc. v. Plaquemines Parish Gov't, 04-0066 (La.7/6/04), 880 So.2d 1. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Hawes v. Kilpatrick Funeral Homes, Inc., 39,089 (La.App.2d Cir.11/17/04), 887 So.2d 711.
Specifically, La. C.C.P. art. 966 states, in pertinent part:

*59 A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B. The motion for summary judgment and supporting affidavits shall be served at least fifteen days before the time specified for the hearing. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 at least eight days prior to the date of the hearing unless the Rules for Louisiana District Courts provide to the contrary. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
La. C.C.P. art. 967(B) states, in pertinent part:
B. When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
In the case sub judice, the Millers supported their motion for summary judgment by attaching, inter alia, the medical review panel opinion, an affidavit from one of the panel members, medical records, autopsy reports and affidavit of Dr. George McCormick, coroner, depositions of the Millers and answers to interrogatories. As previously explained, although causation was established up to $100,000, the medical review panel opinion, the affidavit of the panel member and the coroner's affidavit state that Schumpert's negligence or breach of the standard of care was a cause of the deaths. Other supporting evidence shows the extent of the injuries and suffering of Tiffany and her parents, as well as the close relationship between Tiffany and her parents. Also attached were the Schumpert medical bill totaling $9,981.90 and documentation of funeral expenses, discussed infra.
In response to this well-pleaded motion for summary judgment, the PCF was required to show the existence of a genuine issue of material fact to overcome the motion and may not rest on allegations and/or denials in its pleadings. La. C.C.P. art. 967(B). The PCF attached to its opposition to the motion for summary judgment[3] the autopsy reports, a letter from a physician, various publications and medical articles and an affidavit of Schumpert Nurse Linda Dessommes. The trial court properly struck the physician's letter because it was not certified or sworn and properly excluded the autopsy reports, publications and articles as not being in proper form. Regarding Nurse Dessommes' affidavit, the PCF argues that it was improperly stricken based on the trial judge's erroneous *60 conclusion that causation had been decided and that the affidavit was "about causation." As previously stated, liability and causation up to $100,000 in damages was admitted by virtue of the settlement. Since Nurse Dessommes' affidavit adds nothing relevant to the summary judgment determination; striking the affidavit was not erroneous.
As a result of these rulings, we are constrained to agree that the PCF's opposition was not sufficiently supported as required by La. C.C.P. art. 966. In Jordan, supra, this court recognized that, where the PCF fails to submit sufficient countervailing evidence in opposition to a motion for summary judgment, judgment is properly rendered in favor of the moving party. The PCF would have this court rely solely on alleged discrepancies among the attachments to the Millers' motion for summary judgment to find genuine issues of material fact. As previously stated, however, we agree with the trial court that the Millers' motion was well-pleaded and the opposition was simply insufficient.
Next, we conclude that the trial court correctly found that rendering summary judgment in this case and awarding damages equal to the statutory cap was warranted under the circumstances of this case. Again, from Jordan, supra, we note that, while damages is a question of fact, summary judgment may be proper under the appropriate circumstances, i.e., where there exists no genuine issue of material fact as to whether the plaintiff is entitled to the statutory limit of $500,000. Simply stated, where a medical malpractice victim is clearly entitled to the statutory limit of $500,000, summary judgment should be granted. Bijou v. Alton Ochsner Medical Foundation, 95-3074 (La.9/5/96), 679 So.2d 893; Jordan, supra.
It is evident in this case that the loss was especially greivous. Two lives were lost, a very young expectant mother and her infant daughter. The trial judge stated, "the affidavits filed by the plaintiff in the case establish that clearly the amount of damages would exceed four-hundred thousand dollars ($400,000) for the two persons that lost their life due to the malpractice of Christus-Schumpert Hospital." We agree. Moreover, the PCF submitted no countervailing evidence as to quantum. As the supreme court stated in Bijou, supra, we find that this holding "will eliminate the need for unnecessary litigation on this particular issue, and further the courts' general interest in promoting judicial economy." Summary judgment and the awards of general damages in the amount of $400,000 and special medical damages in the amount of $9,981.90 were proper. See Lamark, supra.
The award of funeral expenses in the amount of $10,000, however, was erroneous. La. R.S. 40:1299.42 provides for recovery of "all malpractice claims for injuries to or death of a patient, exclusive of future medical care and related benefits as provided in R.S. 40:1299.43" not to exceed $500,000. Under section 1299.43, "future medical care and related benefits" does not include funeral and/or burial expenses. See Monistere v. Engelhardt, 04-1126, 04-1127 (La.App. 5th Cir.2/15/05), 896 So.2d 1105, writ denied, 05-0675 (La.11/28/05), 916 So.2d 141; Arrington v. E.R. Physicians Group APMC, 03-02 (La.App. 3d Cir.5/21/03), 847 So.2d 236; Roy v. Gupta, 606 So.2d 940 (La.App. 3d Cir.1992), writ denied, 609 So.2d 232 (La.1992).[4] The *61 judgment will, therefore, be amended to delete the award of funeral expenses.

DECREE
For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Thomas Miller, et al, and awarding general damages in the amount of $400,000, special medical damages in the amount of $9,981.90 and funeral expenses in the amount of $10,000 is amended to delete the award of funeral expenses. In all other respects, the judgment is affirmed.
AMENDED AND, AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The appellant in this case is the Louisiana Patient's Compensation Fund ("PCF"). Initially, Walter Clawson, counsel for the PCF, filed the appeal in his name individually. Mr. Clawson subsequently submitted to this court that his filing of the appeal in his name was a typographical error. Since appeals are favored, this court allowed Mr. Clawson to file an amended motion for appeal naming the appropriate party, the PCF, as appellant.
[2] The trial judge further found that, like in Jordan, this case falls within the window prior to the 2003 amendment to La. R.S. 40:1299.44(C), which changed the statute to allow the PCF to assert third party healthcare provider fault to reduce its share of damages. Whether or not third party healthcare provider fault can be asserted by the PCF is not an issue in the present appeal. We do note, however, that, in this case, the alleged additional cause of Tiffany's and Jennifer's deaths was an underlying heart condition of Tiffany's, not fault of a third party healthcare provider. We simply note this distinction and do not express any opinion as to how this distinction may become significant when the PCF attempts to assert additional causative factors in similar cases.
[3] There were actually supplemental oppositions and additional time granted by the court for the filing of additional documents, both in support of and in opposition to the motion. For clarity, we simply refer collectively to the attachments filed at any time.
[4] The trial court's reliance on Lamark, supra, for the award of funeral expenses was misplaced. Lamark involved an award of special damages in the form of medical expenses, not funeral or burial expenses.